Jennifer D. CHAMBERS, Plaintiff,

v.

VALLEY NATIONAL BANK OF ARIZONA, a federally chartered banking institution, Defendants.

No. CIV 88–472–PCT–RGS.

United States District Court,
D. Arizona,
Phoenix Division.

Oct. 4, 1988.

STRAND, District Judge.

## I. BACKGROUND

Plaintiff initially filed this action in state court, alleging:

1. claims of age discrimination under both the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*, and its state counterpart, the Arizona Civil Rights Act, A.R.S. § 41–1401, *et seq.;*

2. a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.;* and

3. state law claims of wrongful termination in violation of public policy, wrongful termination in violation of plaintiff's implied-in-fact contract rights, and wrongful termination in breach of the implied covenant of good faith and fair dealing arising out of plaintiff's employment relationship with defendant.

Defendant subsequently removed the action to federal court based on federal question and pendent jurisdiction. Defendant filed its answer to plaintiff's complaint on March 30, 1988 and now seeks partial summary judgment on several of plaintiff's claims.

The complaint reveals that plaintiff worked for defendant from 1971 until June 30, 1987. Defendant placed plaintiff on probation on May 20, 1987 allegedly due to performance problems and terminated her employment on June 30, 1987. At the time of her termination, plaintiff was working as a customer service manager at one of defendant Valley National Bank's three (3) branches in Kingman, Arizona.

Defendant informed plaintiff, and contends in this action, that plaintiff was laid off due to reductions in staff force based on a "down sizing plan" economically-necessitated by a profitability study conducted by defendant, which indicated that defendant would have to reduce existing staff in its three (3) Kingman branches or close one or more of the branches. Defendant contends that this "downsizing" of its operations in Kingman was followed by similar reductions in staff throughout all defen-

Denis R. Malm, Lake Havasu, Ariz., for plaintiff.

Wm. R. Hayden, Phoenix, Ariz., for defendants.

dant's banks in Arizona, which has resulted in approximately five hundred (500) job reductions statewide.

Plaintiff maintains that defendant's representatives told her that she was targeted for the lay off due to her probationary status. Plaintiff indicates that her position was not eliminated but was instead given to a younger, less experienced employee. Plaintiff's arguments thus appear to be two pronged: defendant improperly terminated her because of her age and/or improperly terminated her procedurally because defendant failed to follow its own disciplinary procedures and policies when it put her on probation and ultimately terminated her employment.

## II. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

At the hearing held on defendant's motion for partial summary judgment, the court granted defendant's motion for partial summary judgment on the Title 7 claim contained in count five (5) and on the punitive damages claims contained in counts four (4) and five (5). The court also denied plaintiff's motion to defer ruling on defendant's motion for partial summary judgment, and granted defendant leave to withdraw its motion for partial summary judgment on the wrongful termination in violation of public policy claim contained in count one (1). Accordingly, only defendant's requests for partial summary judgment on count two (2), the wrongful termination in violation of plaintiff's implied-in-fact employment contract rights claim, and count three (3), the wrongful termination in violation of the implied covenant of good faith and fair dealing claim remain to be ruled on.

### A. COUNT 2: WRONGFUL TERMINATION IN VIOLATION OF PLAINTIFF'S IMPLIED–IN–FACT EMPLOYMENT CONTRACT RIGHTS

 The general rule under Arizona law has traditionally been that, if an employment contract is for an indefinite period of time, it is presumed to be terminable at will by either party with or without cause. *E.g., Wagner v. City of Globe,* 150

Ariz. 82, 84, 722 P.2d 250, 252 (1986) (citations omitted); *Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 375–76, 710 P.2d 1025, 1030–31 (1985). However, Arizona, like the majority of other states, recently has modified its "employment-at-will" doctrine by creating exceptions to its operation. *Wagner,* 150 Ariz. at 84–85, 722 P.2d at 252–53; *Wagenseller,* 147 Ariz. at 376, 710 P.2d at 1031. Arizona recognizes three major exceptions to the employer's right to terminate an employee at will: (1) the "public policy" exception, which permits recovery if the employer's conduct undermined some important public policy; (2) the "implied-in-fact contract" exception, which relies upon proof of an implied promise of continued employment absent just cause for termination, to protect the legitimate expectations of workers, and which may be established by oral representations, a course of dealing, personnel manuals or memoranda; and (3) the "implied-in-law covenant of good faith and fair dealing" exception, which protects the parties' rights to receive the benefits of their employment contract. *Wagner,* 150 Ariz. at 85, 722 P.2d at 253 (citations omitted); *Wagenseller,* 147 Ariz. at 376–86, 710 P.2d at 1031–41.

In count two (2) of her complaint, plaintiff asserts that an implied-in-fact contract of employment was created by defendant's personnel policy manual and handbook, and that her employment, thus, could not be terminated except for good cause. The "implied-in-fact contract" or "personnel policy manual" exception to the "employment-at-will" doctrine was first recognized by the Arizona Supreme Court in *Leikvold v. Valley View Community Hosp.,* 141 Ariz. 544, 688 P.2d 170 (1984), where the court held that if an employer issues a personnel policy manual or handbook upon which its employees may reasonably rely, the employer may not treat the contents of these documents as illusory, because the employer's representations in the personnel manual then become terms of the employment contract and limit the employer's ability to discharge the employee. *Id.* at 546, 548, 688 P.2d at 172, 174. However, the

*Leikvold* court qualified its holding by providing:

> We do not mean to imply that all personnel manuals will become part of employment contracts. Employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason. Such actions, either not issuing a personnel manual or issuing one with clear language of limitation, instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual.

*Id.* at 548, 688 P.2d 174.

■ Both parties agree that defendant's handbook and personnel policy manual in force at the time of plaintiff's termination contained disclaimers prominently displayed in their introductory paragraphs. The disclaimer in the employee handbook provides:

> The contents of this Employee Handbook summarize present Valley National Bank programs and policies and are intended as guidelines only. The employee should be aware that these policies and programs may be amended at any time, and that depending upon the particular circumstances of a given situation, the Bank's actions may vary from written policy. As such, the contents of this handbook DO NOT CONSTITUTE THE TERMS OF A CONTRACT OF EMPLOYMENT. Nothing contained in this handbook should be construed as a guarantee of continued employment, but rather, employment with the Bank is on an "at will" basis. This means that the employment relationship may be terminated at any time by either the employee or the Bank for any reason not expressly prohibited by law. Any written or oral statement to the contrary by a supervisor, corporate officer, or other agent of the Bank is invalid and should not be relied upon by any prospective or existing employee.

*See* Defendant's Motion for Partial Summary Judgment at p. 7; Plaintiff's Response to Motion for Partial Summary Judgment at p. 6–7. Defendant's personnel policy manual contains similar limiting language. *See* Attachment A to Exhibit 1 to defendant's Motion for Partial Summary Judgment, Attachment to the Affidavit of Barbara J. Haywood, Vice President and Manager of Employee Relations/Affirmative Action for defendant Valley National Bank.

Plaintiff contends, however, that this "boilerplate disclaimer" should not prevent the handbook and manual from becoming part of the employment contract and defeating defendant's right to dismiss plaintiff at will, because the disclaimer did not appear in the handbook and manual until 1985, approximately fourteen (14) years after plaintiff was hired by defendant. The court does not find this argument persuasive. Following the *Leikvold* decision in 1984, defendant complied with the dictates of the Arizona Supreme Court and added clear and conspicuous disclaimers to prevent its personnel manual and handbook from becoming part of its employment contracts. At her deposition, plaintiff confirmed that she had read the disclaimers and knew what they meant. *See* Exhibit 1 to Defendant's Reply Memorandum in Support of Defendant's Motion for Partial Summary Judgment, Chambers' deposition at p. 96, lines 1–16. Under the circumstances, she could not reasonably have relied on these documents as means of creating employment which was not terminable at will.

■ Moreover, caselaw indicates that the fact that the manuals and handbooks published prior to 1985 did not include disclaimers does not preclude the addition of the disclaimers in 1985 from preventing those documents from becoming part of an implied-in-fact contract of employment. Employment contracts "can be modified by the parties at any time just as other contracts can be modified." *Wagner*, 150 Ariz. at 85–86, 722 P.2d at 253–54. The inclusion of the disclaimer in the 1985 publications may best be considered an offer of a modification to a unilateral contract of

employment, which plaintiff accepted by continuing her employment with defendant. *See Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626–27 (Minn.1983); *see also Mattison v. Johnston*, 152 Ariz. 109, 112–13, 730 P.2d 286, 289–90 (App.1986) (continued employment is sufficient consideration for the modification of an at-will employment contract to require the enforcement of a covenant not to compete added subsequent to the initial entry into the employment contract). Although an "employer is contractually bound to observe ... [published] policies until they are modified or withdrawn," *Enyeart v. Shelter Mut. Ins. Co.*, 693 S.W.2d 120, 123 (Mo.App.1985), he is free to modify his personnel policies prospectively. *Langdon v. Saga Corp.*, 569 P.2d 524, 527–28 (Okla.App.1976); *see also Wagner*, 150 Ariz. at 85–86, 722 P.2d at 253–54.

Defendant expressly provided in its publications that employment was employment-at-will, terminable by either party with or without cause, and that the manual and handbook were not a part of the employment contract and did not change the employment-at-will relationship between the parties. Accordingly, the personnel manual and handbook did not become part of the employment contract, thereby limiting defendant's ability to terminate plaintiff at will, and defendant is entitled to summary judgment on count two (2), the "implied-in-fact contract" or "personnel policy manual" claim.

B. COUNT 3: WRONGFUL TERMINATION IN VIOLATION OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CONTAINED WITHIN THE EMPLOYMENT CONTRACT

■ Another of the exceptions that the Arizona courts recognize to the general rule that employment contracts for an indefinite period of time are presumed to be terminable at will by either party with or without cause, *e.g.*, *Wagner*, 150 Ariz. at 84, 722 P.2d at 252; *Wagenseller*, 147 Ariz. at 381, 710 P.2d at 1036, is the "implied covenant of good faith and fair dealing" exception. *Wagner*, 150 Ariz. at 85, 722

P.2d at 253 (citing *Wagenseller*, 147 Ariz. at 376, 710 P.2d at 1031). In *Wagenseller*, the Arizona Supreme Court made it clear that the implied covenant of good faith and fair dealing does not nullify an at-will employment contract by injecting terms of employment tenure or just cause determination requirements for discharge; rather, the implied covenant merely protects a party's right to receive whatever benefits were actually agreed upon. *Wagenseller*, 147 Ariz. at 385, 710 P.2d at 1040. Thus, while the covenant does not require the employer to terminate the employee only for good cause, the covenant protects an employee from a discharge based on the employer's desire to avoid payment of benefits already earned by the employee, because the right to receive these benefits was a part of the employment agreement. *Id.* Thus, as interpreted and defined by the Arizona courts, the "implied covenant of good faith and fair dealing" exception to the employment-at-will rule merely "protects parties' rights to receive the benefits of their contract." *Norman v. Recreation Centers of Sun City*, 156 Ariz. 425, 430, 752 P.2d 514, 519 (App.1988).

Since the nature of the parties' employment contract was such that plaintiff's employment was terminable at will at any time by either defendant or plaintiff, tenure or termination only for good cause was not one of the benefits of their particular employment agreement. Plaintiff's argument that her termination was in contravention of public policy because she was terminated due to her age is not appropriately addressed under the implied covenant exception; rather her public policy argument is fully covered and protected by the public policy exception to the general rule of at-will employment. Plaintiff's termination did not deprive her of any benefits guaranteed her by her employment contract; accordingly, defendant is entitled to summary judgment on count three (3), the implied covenant of good faith and fair dealing claim.

Based upon the foregoing,

IT IS ORDERED granting defendant's Motion for Partial Summary Judgment on

counts two (2) and three (3) of plaintiff's complaint.