**E.G. ADAMS, Plaintiff,**

v.

**SQUARE D. COMPANY, Defendant.**

**Civ. A. No. 3:90–313–17.**

United States District Court,
D. South Carolina,
Columbia Division.

Aug. 15, 1991.

Herbert W. Louthian, Jr. of Louthian & Louthian, Columbia, S.C., for plaintiff.

G. Daniel Ellzey, Jonathan P. Pearson and Mason G. Alexander of Ogletree, Deakins, Nash, Smoak & Stewart, Columbia, S.C., for defendant.

## ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

This matter comes before the court on the motion of the defendant, Square D Company (Square D), for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff, E.G. Adams, along with four other individuals, filed this action on February 15, 1990. These four additional plaintiffs were all dismissed from the suit on or before December 12, 1990. The court then permitted Adams to file an amended complaint on December 19, 1990. Adams, a Square D employee, alleges that his employment at-will status was modified by a 1973 employee handbook and a Standard Practice Bulletin and that the defendant's discharge of him was, therefore, wrongful in that it breached his employment agreement. The defendant contends that Adams' at-will status was modified by neither the handbook nor the Standard Prac-

tice Bulletin because neither applied to the plaintiff as plant manager. The defendant also argues that a 1986 handbook, which contains a disclaimer, applies and that the disclaimer supports its position that the plaintiff was an at-will employee. After hearing oral argument on Monday, July 1, 1991, the court took this motion under advisement. For the reasons discussed below, the court grants defendant's motion for summary judgment and dismisses this case.

Adams was employed by the Square D Company on June 11, 1963, in Cleveland, Ohio. He received several promotions and by 1972 had become the manager of quality control at the Cleveland plant. In 1972, Square D moved from Cleveland to a new facility in Columbia, South Carolina. Plaintiff moved to Columbia as development engineering supervisor. Adams received additional promotions in Columbia and in 1981 he became plant manager for the Columbia plant.

It is undisputed that during the mid–1980's the Columbia plant suffered financially. Defendant states that it had "staggering losses" during this period. The defendant also claims that the Columbia plant had developed a reputation for poor quality control and inability to meet delivery deadlines. Finally, defendant, citing two employee attitude surveys taken at the Columbia plant, claims that the plant suffered from poor employee relations. According to Square D, one of the major problems with employee morale was their dislike and mistrust of Adams.

The financial problems of the defendant prompted permanent layoffs. In early 1987, Adams, as plant manager, implemented some layoffs. Then, on June 2, 1987, Adams was dismissed by Square D. The defendant contends that this discharge was in response to all of the problems Square D was undergoing. Plaintiff claims that this discharge was wrongful because it violated his employment agreement with the defendant.

In *Small v. Springs Industries, Inc.*, 292 S.C. 481, 486, 357 S.E.2d 452, 455 (1987), the South Carolina Supreme Court held that "employee handbook[s], along with other evidence," could constitute an implied employment contract between an employer and employee. Adams contends that his at-will employment with Square D was altered by an employee handbook and by a Standard Practice Bulletin (SPB).

## I. EMPLOYEE HANDBOOK

Adams' first cause of action for breach of contract is based on an employee handbook issued in 1973 when Square D opened its Columbia plant (first handbook).[1] This first handbook had provisions regarding layoffs and service credit which stated in part:

### Layoff

Business conditions can change to such an extent that we will not have sufficient work to keep all employees gainfully employed. Should this situation occur, the total workforce will have to be reduced by laying off the number of employees over and above those needed to maintain production schedules. Since it is necessary to retain qualified employees to do the available work, layoffs will be determined by considering qualifications and service credit with the Company. This means that normally the employee with the least amount of service credit will be the first to be laid off, and those employees with the greater amount of service credit and the necessary qualifications will be retained to do the available work. Employees on layoff will be recalled to work in reverse order....

### Service Credit

Service Credit is your length of service as an employee in the Columbia Square D Company. We recognize an employee's length of service as a part of personal security, and as long as qualifications are satisfactory, service credit will be used as described in this section. Service

---

1. In this first cause of action, Adams claims that he was laid off. Square D, however, argues that he was terminated and therefore this handbook is irrelevant. For the purposes of this motion, the court will assume in this cause of action that Adams was laid off.

credit will be used to determine eligibility for vacation benefits. It will also be a factor in the event of a transfer, layoff, promotion, and shift preference.[2]

In July 1986, the defendant issued a new employee handbook (new handbook) to replace the first handbook. The new handbook provided new benefits to the employees, including more paid holidays. The provisions on Layoff and Service Credit, *supra*, were deleted from the new handbook. The new handbook did contain a section entitled "Separation From Employment," though, which stated in part:

> Circumstances such as a reduction in the workforce, the end of an assignment or reorganization occasionally require the release of an employee from employment. A release from employment may also result if, in the opinion of the Company, an employee's work performance is unsatisfactory ... If your performance is unsatisfactory, you will be informed and have the opportunity to improve prior to your separation from employment. On the other hand, discharge means separation for serious breach of Company policy or for insubordination, dishonesty or gross misconduct. If appropriate, an employee being discharged will be given a written reason; however, advance notice is not required.

Most importantly for this case, the new handbook also included the following disclaimer: [3]

> The purpose of this booklet is to outline some general information concerning company history, employment, and benefits at this location to both new and longer-term employees who have a question concerning his/her employment. This booklet is not intended to create any contractual rights in favor of the employee or the Company. The Company re-

serves the right to change the terms of this booklet at any time.

The plaintiff contends that the new handbook does not apply to him and that the defendant violated the terms of the old handbook in laying him off. The defendant claims that the new handbook is applicable to the plaintiff; the disclaimer is valid; and the plaintiff, therefore, was merely an at-will employee.[4] On the handbook claim, the issue before this court, then, is whether the defendant's post-hire amendment to the handbook was effective as to the plaintiff.

The South Carolina Supreme Court changed South Carolina employment law in 1987 with *Small*. The *Small* court made it clear that an employee handbook, among other things, could limit at-will employment. Disclaimers were also permitted. Without question, then, the new handbook at issue in the present case would apply to all Square D employees hired on or after the date of its issuance. What the *Small* court did not reach, however, was whether this new handbook, which amends the previous one, can be effective against employees hired *before* it was issued and while the old handbook was still in effect.

This issue has not yet been addressed by the South Carolina Supreme Court. Judge Henderson, then a United States District Court Judge, was faced with this question in *Toth v. Square D Co.*, 712 F.Supp. 1231 (D.S.C.1989). Judge Henderson held that, in such situations, the "defendant must therefore show that the plaintiffs assented to modify the alleged contract to reflect the terms of the revised handbook and that they received sufficient consideration to support that modification." *Id.* at 1236.

Plaintiff in the present case urges this court to adopt the reasoning of Judge Henderson and deny summary judgment.

---

**2.** Adams' theory is that, according to these provisions, the defendant should not have laid him off and that it should have at least allowed him to "bump down" and perform some other job.

**3.** The court in *Small* stated that a company could maintain its at-will employment practice with a handbook "by inserting a conspicuous disclaimer or provision into the written document." 292 S.C. at 485, 357 S.E.2d at 455.

**4.** The defendant claims, in the alternative, that even if the old handbook applies, Square D did not violate it. Because this court has determined that the new handbook applies to Adams, it need not discuss the defendant's alternative position.

Defendant argues that *Toth* incorrectly applied bilateral contract rules to a unilateral contract. *See Small*, 292 S.C. at 484, 357 S.E.2d 452, 454. Square D contends that since liberal rules of contract construction were used to form these "employment contracts," liberal rules of contract modification should also be applied. Finally, the defendant cites several subsequent state court cases, both in South Carolina and in Michigan,[5] which allow such post-hire amendments.

Less than one month after *Toth*, the United States Court of Appeals for the Sixth Circuit certified to the Michigan Supreme Court a question similar to the one at issue in the present case. *In re Bankey v. Storer Broadcasting Co.*, 4 I.E.R. Cases 673 (Mich.1989). In *Bankey* the plaintiff's employment at-will status had been modified by a "Personnel Policy Digest" which expressly provided that an employee would be discharged only for cause. The employer subsequently amended the policy to change the status of employment back to employment at-will. The employer had not expressly reserved the right to so amend the "Personnel Policy." The United States District Court for the Eastern District of Michigan held that the "employer cannot unilaterally alter the employment relationship as to *existing* employees to permit discharge at will." *Id.* at 673. (emphasis in original).

Because of the uncertainty of the law surrounding the scope of the "handbook exception," the Michigan Supreme Court granted the request to answer the certified question. *Id.* at 674. The court held that "[a]n employer may, without an express reservation of the right to do so, unilaterally change its written policy from one of discharge for cause to one of termination at will, provided that the employer gives affected employees reasonable notice of the policy change." *Id.* at 673.

The plaintiff in *Bankey* argued that the employment contract could not be modified absent a " 'meeting of the minds.' " *Id.* at 675. The court noted, however, that under *Toussaint*, like *Small*, the contract could have originated without mutual assent. It reasoned, therefore, that "[u]nder circumstances where 'contractual rights' have arisen outside the operation of normal contract principles, the application of strict rules of contractual modification may not be appropriate." *Id.* (footnote omitted).

While the South Carolina Supreme Court has not addressed this issue, some of the state circuit courts have considered this problem.[6] In *Allan v. Sunbelt Coca–Cola Bottling Company*, 4 I.E.R. Cases 1453 (S.C.Ct.C.P. 1st Cir.1989), the plaintiff claimed that Sunbelt Coca–Cola Bottling Co. (Sunbelt), having purchased the stock of the plaintiff's employer, Dorchester Coca–Cola Bottling Co. (Dorchester), breached its employment contract with him when it permanently laid him off. Twice after buying Dorchester's stock, Sunbelt issued disclaimers to its employees. Plaintiff received both. These disclaimers clearly stated that employment with Sunbelt was purely at the will of the company. The court determined that the Dorchester handbook in question was "not sufficient to establish a contract." *Id.* at 1456. The court continued that even if this handbook had created a contract, the disclaimers had effectively modified this contract, thereby making Plaintiff an at-will employee. "Plaintiff's express assent to this modification is not required. In the unilateral contract framework, which clearly applies to the alleged contract, the employees' returning to work the next day constitutes his acceptance of and consideration for the employer's modification of existing policies." *Id.* at 1457 (citation omitted).

The South Carolina Court of Common Pleas for the Fifth Judicial Circuit followed the *Allan* court's reasoning in *Blankenship v. South Carolina Electric and Gas*

---

5. The *Small* court relied, in part, on the Michigan Supreme Court's decision in *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980).

6. The United States Court of Appeals for the Fourth Circuit also recently upheld a post-hire amendment based on Maryland law. *Conkwright v. Westinghouse Electric Corp.*, 933 F.2d 231 (4th Cir.1991).

*Company.* 5 I.E.R. Cases 930 (1990). In *Blankenship* the plaintiff claimed that the defendant (SCE & G) had breached its employment contract with her when it terminated her for refusing to take a mandatory random drug test. SCE & G had modified its handbook to include a random drug testing policy. The handbook also contained a disclaimer which the court determined was effective in maintaining plaintiff as an at-will employee.

In discussing the plaintiff's claim that SCE & G could not unilaterally modify its handbook to require mandatory drug testing, the court concluded:

> Based on the logic of these cases [*Allan* and *Bankey* ], therefore, the court finds that SCE & G could unilaterally modify its employee handbook to include a random drug testing policy and procedure without any additional consideration from the plaintiff. She knew about the policy because evidence in the record shows that she received the revised handbook. If she did not want to work under the new drug guideline, her only recourse was to quit. She did not do so, and through her continued employment indicated that she consented to the provisions in the revised handbook.

*Blankenship*, 5 I.E.R. Cases at 933.

This court is not bound by Judge Henderson's decision in *Toth.* Neither is it bound by the opinions of the South Carolina trial courts. Nevertheless, this court may consider the state court cases as it attempts to determine how the South Carolina Supreme Court would decide issue of post-hire amendment. Plaintiff in this case was the plant manager at the time the new handbook, with the disclaimer, was distributed to the employees. As plant manager Adams reviewed the drafts of the new handbook, suggested changes thereto, and, defendant argues, authorized the switch from the old handbook to the new.

■ The *Bankey* court stated that "[f]airness suggests that a ... policy announced with flourishes and fanfare at noonday should *not* be revoked by a penny-whistle trill at midnight. We hold that for ... [an amendment] to become legally effective, reasonable notice must be uniformly given to affected employees." 4 I.E.R. Cases at 679. This court agrees and considers the plaintiff's knowledge of the contents of the new handbook important. Adams obviously was aware of the disclaimer in the new handbook and the purpose it served. The court determines that he had "reasonable notice" that the handbook was being amended and that all employment was at the will of the company.[7]

■ The court agrees with the defendant, and thus, *Allan, Blankenship,* and *Bankey,* that because normal rules regarding contract formation are not followed in forming these "employment contracts," liberal rules of contract modification should be allowed. Were employers required to renegotiate any and all amendments or new policies with each employee, the resulting confusion would be great. The company might have as many policies as it did employees, as some would agree to some modifications while other employees would not. "If an employer had amended its handbook from time to time, as often is the case, the employer could find itself obligated in a variety of different ways to any number of different employees, depending on the modifications which had been adopted and the extent of the workforce turnover." *Bankey,* 4 I.E.R. Cases at 678. The resulting confusion and uncertainty would benefit no one, including employees. This court does not believe that the South Carolina Supreme Court intended such a result in *Small* nor does this court think that the state supreme court would adopt such an argument today.

For the reasons discussed above, this court holds that the 1986 handbook, including the disclaimer, was an effective amendment to the old handbook. This post hire amendment was effective against Adams. The disclaimer makes it clear that he was simply an employee at-will. "Under the

---

7. The court also notes that the new handbook became effective in 1986, whereas plaintiff was not terminated until June 2, 1987. This case is not one where the company amended its handbook one day so that it could fire an employee the next.

general rule that an at-will employee may be terminated for any reason," the court holds that Square D did not breach an employment contract with Adams. *Edward Epps v. Clarendon County*, —— S.C. ——, ——, 405 S.E.2d 386, 387 (1991). Defendant's motion for summary judgment as to this cause of action is, therefore, GRANTED.

## II. STANDARD PRACTICE BULLETIN

■ Adams' amended complaint alleges that his termination was also wrongful because it violated a Standard Practice Bulletin (SPB), concerning Corrective Action Procedure, bearing an issuance and effective date of January 1, 1986. Plaintiff contends that this SPB altered his employment at-will status and that he had a right to rely on it. The SPB contained a five step, progressive disciplinary procedure to be used in most circumstances, although the document provided exceptions to this normal procedure. Admittedly, Adams' discharge did not follow this procedure set forth in the SPB. Adams claims this deviation was a breach of contract. The defendant claims that this SPB clearly did not apply to Adams as plant manager; therefore, it in no way altered his employment at-will status, and that he could not reasonably rely upon it.[8] The court agrees with the defendant.

While the SPB does not on its face exclude the plant manager and other managerial positions, it is obvious from the context of this SPB that the purpose of this document was to give supervisors guidance in disciplining and managing employees. As such it was not the type of document on which Adams could reasonably rely to alter his employment status. The SPB allows managers at a level beneath plant manager to discharge employees and to deviate from the disciplinary procedure listed in the SPB. The SPB contains no provisions, however, regarding disciplining supervisors and management level employment. If the SPB had been intended to apply to manage-

ment level employees, the document surely would have provided provisions for such. Moreover, plant manager Adams approved this SPB. He was aware of its contents and its purpose. He can not now be heard to claim this SPB altered his employment status with the defendant in any way. Accordingly, the defendant's motion for summary judgment as to the cause of action regarding the SPB is GRANTED.

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. This case is HEREBY DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

---

**8.** The defendant also argues that because the SPB provides for exceptions from the normal disciplinary proceedings, it is not sufficiently mandatory under *Small* to alter the at-will status. Because the court determines that this SPB did not apply to Adams as plant manager, it is not necessary to decide whether the SPB is sufficiently mandatory under *Small.*