24158

Kathy FLEMING, Appellant v. BORDEN, INCORPORATED, Robert W. Owens, John W. Rogers; and The Woodman Company, now merged with Kliklok Corporation, Respondents.

(450 S.E. (2d) 589)

Supreme Court

*C. Richard Kelly,* Columbia, *for appellant.*

*M. Lee Daniels, Jr.,* Greenville, *for respondents Borden, Owens* and *Rogers.*

*Jesse A. McCall, Jr.,* Greenville, *for respondent The Woodman Co.* now merged with *Klikok Corp.*

Heard May 3, 1994.

Decided Oct. 24, 1994. Reh. Den. Dec. 4 , 1994.

TOAL, Justice:

In this wrongful discharge action and products liability action, Kathy Fleming appeals the jury verdict for the employer and the circuit court's grant of summary judgment to her supervisors and to the manufacturer of the alleged unreasonably dangerous product. We affirm in part and reverse in part.

## FACTS

The plaintiff, Kathy Fleming ("Fleming"), began employment with the defendant Borden, Incorporated ("Borden") in January 1981. The Borden plant produced potato chips, corn chips, cheese doodles and other similar snack foods. Fleming worked in the maintenance group which was responsible for cleaning the plant. Fleming continued her employment with Borden until she was terminated in June 25, 1986 for excessive unexcused absences.

On January 30, 1986, Fleming sustained a work-related in-

jury for which she received workers' compensation benefits. Fleming was cleaning a machine manufactured by The Woodman Company, Inc. ("Woodman") at the time she was injured.

On November 2, 1989, Fleming filed suit against Borden asserting numerous claims related to her discharge. The case was removed to federal court on the ground of diversity of citizenship. The federal district court later remanded to state court but retained jurisdiction of the ERISA claims.

After remand to South Carolina Circuit Court, the defendants moved for summary judgment. Fleming countered with a motion to amend her complaint. Judge Moore issued his order on March 25, 1991 dismissing Fleming's claims which contained ERISA damages and allowing her to file an amended complaint asserting causes of action which did not included ERISA damages.

Thereafter, Fleming motioned the court for permission to amend her complaint against to add Woodman as a defendant in order to assert products liability claims against Woodman. Judge Maring issued his order of September 7, 1991 allowing the amendment.

The defendants Borden, Owens and Rogers[1] again moved to dismiss the amended complaint. Judge Stephen issued his order on February 17, 1992 denying summary judgment on some causes of action, consolidating some, and granting summary judgment on some. The following causes of action were left for trial:

1. Breach of employment contract by fraudulent act against Borden,
2. Wrongful discharge against Borden,
3. Tortious interference with contract against Owens and Rogers,
4. Civil conspiracy against Owens and Rogers,
5. Products liability action against Woodman.

The case was tried before a jury on May 5, 1992. At the conclusion of plaintiff's case, Judge Burnett granted defendant Woodman's motion for a directed verdict finding: (a) Fleming failed to prove the product was defective (b) the machine was

---

[1]Robert W. Owens and John W. Rogers were Fleming's supervisors while she was employed with Borden.

substantially modified after deliver, and (c) Fleming was aware of the risks in cleaning the machine.

Judge Burnett also directed a verdict in favor of the defendants Rogers and Owens, Fleming's supervisors, on the claims of civil conspiracy and tortious interference with contract. Only Borden remained a defendant. The jury returned a verdict in Borden's favor.

## LAW/ANALYSIS

### A. *Products Liability*

In the products liability cause, the trial judge directed a verdict in favor of manufacturer and seller Woodman on two grounds: (1) Borden had materially altered the machine and (2) Kathy Fleming had assumed the risk. We disagree with each of these rulings.

The modern products liability tort action is premised on the concept that the cost of injuries which flow from a "product defect" should be borne by the manufacturer or seller rather than the ultimate user. Beginning with *McPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916), common law privity of contract as a predicate requirement for manufacturers' or sellers' tort liability for a defective product was abandoned. Although grounded in the theory of negligence, the *MacPherson* decision was the first step in moving towards strict liability in tort or warranty liability. In *Salladin v. Tellis*, 247 S.C. 267, 146 S.E. (2d) 875 (1966) and *Mickle v. Blackmon*, 252 S.C. 202, 166 S.E. (2d) 173 (1969), South Carolina judicially moved in the direction of the modern strict liability approach.[2] In 1974, the General Assembly signaled its agreement by legislatively adopting Restatement (Second) of Torts § 402A as §§ 15-73-10, -20 and -30, S.C. Code Ann. (1976), our Defective Products Act.[3] The rulings

---

[2]Both *Salladin, supra,* and *Mickle, supra,* were grounded in negligence. Each case, however, moved South Carolina closer to a strict liability approach in products liability actions. In *Salladin,* the common law privity requirement was abandoned. In *Mickle,* the automobile manufacturer was held to owe a duty to design a crash-worthy automobile.

[3]The most useful analysis of South Carolina's development of the law in thhis area, set against the backdrop of a succinct review of American legal trends, is found in F. Patrick Hubbard and Robert L. Felix, *The South Carolina Law of Torts,* Chapter 4, Products Liability (1990) which I have liberally, and I hope correctly, paraphrases.

made by the trial judge were based on two provisions of this act.

In passing on motions for directed verdict, the trial court must view the evidence and all inferences which may reasonably be drawn therefrom in light most favorable to the nonmoving party. If more than one reasonable inference can be drawn from the evidence, the case must be submitted to the jury. *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 415 S.E. (2d) 393 (1992).

### 1. Material Alteration

The first section of South Carolina's Defective Product Act formulates manufacturers' and sellers' liability as follows:

§ 15-73-10 Liability of seller for defective product.
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property, if
(a) The seller is engaged in the business of selling such a product, and
(b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

S.C. Code Ann. § 15-73-10 (1976). This section imposes strict liability upon the manufacturer and seller for an injury to any user caused by its product, if the product is "expected to and does reach the user or consumer without substantial change." *Id.*[4] Thus, if it can be shown that the product was (1) materially altered before it reached the injured user and (2) such alteration could not have been expected by the manufacturer or seller, then the manufacturer or seller is not liable. *See generally Kennedy v. Customer Ice Equipment Co. Inc.*, 271 S.C. 171, 246 S.E. (2d) 176 (1978). In the "no fault" "strict liability" setting of the modern products case, the defense of material alteration becomes very important. When an alteration to the product is shown, it is sometimes forgotten that the foreseeability of the alteration must also be examined.

---

[4]*See Henderson v. Gould Inc.*, 288 S.C. 261, 341 S.E. (2d) 806 (Ct. App. 1986) ("seller" merely descriptive term).

Turning now to the pertinent facts, as part of her job, Fleming was required to clean the top of a machine manufactured by Woodman. Woodman also manufactured a platform to be used when cleaning the machine and installed the machine in the Borden plant. Sometime after installation of the machine, the Woodman platform was removed and ladders were substituted.

Fleming's expert witness testified that the nine-foot machine was designed in such a manner as to require cleaning the top. In order to clean the top of the machine, a platform was required. The platform Woodman originally supplied was removed because the Woodman machines were installed so close together that the top of the machine in question could not be reached with the Woodman platform. Although the Woodman platform complied with OSHA regulations, Fleming claimed that Woodman's machine was designed such that certain cleaning had to be performed at the top of the machine. Configuration of the machine required cleaning the top and the location at which Woodman installed the machine rendered the Woodman platform unusable for cleaning the top of the machine. Thus, Fleming claims it was foreseeable that the platform would have to be removed and other means utilized to reach the top of the Woodman machine.

The trial judge found that since it was undisputed that the machine was materially altered after delivery to Borden, he was required to grant summary judgment in favor of Woodman. The was error. While all parties agreed that the machine had been altered by removal of the Woodman platform, the parties vigorously dispute the foreseeability of this action and the relationship of the removal of the platform to the accident. "Liability [may] . . . be imposed upon a manufacturer of seller notwithstanding subsequent alteration of the product . . . [when] the alteration could have been anticipated by the manufacturer or seller, or did not causally contribute to the damages or injuries complained of." 1 Robert D. Hersh & Henry J. Bailey, *American Law of Products Liability* 2d § 130 (1974); *see Kennedy v. Custom Ice Equipment Co., Inc.,* 271 S.C. 171 246 S.E. (2d) 176 (1978) (question as to whether injury caused by defect in design or whether defect created by subsequent unforeseeable modification by third party for the jury); *see generally Alberg v. Hardin Marine Corp.,* 387 N.W. (2d) 779

(Iowa App. 1986) (foreseeability of alteration for jury).

Woodman not only manufactured the machine and the platform but also installed the machine. Fleming's expert testified that the design of the machine coupled with the placement of the machine gave rise to a violation of OSHA standards. The testimony created a jury question as to whether the machine was unreasonably dangerous. In that connection, it was for the jury to decide whether the removal of the Woodman platform was a foreseeable alteration of the machine since there was evidence that Woodman installed the machine in such a manner as to prevent the use of the platform it supplied with the machine. If the jury believed this evidence, it could legitimately conclude that removal of allegedly misdesigned platform, was an alteration, but not a substantial or material one, inasmuch as it was foreseeable. If the jury so concludes, the defense of "material alteration" fails.

## 2. *Assumption of the Risk*

The second ground of the trial judge's direction of verdict for Woodman was that the assumption of the risk provision of our Defective Products Act, S.C. Code Ann. § 15-73-20 (1977), barred Fleming from recovery against Woodman. Section 15-73-20 provides as follows: "If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery." Fleming testified that she witnessed other employees fall while attempting to clean the Woodman machine. Further, she had fallen once prior to the accident which caused the injuries litigated here. Fleming also testified that cleaning the top of the machine was part of her job. Fleming's expert testified that without a proper ladder or platform, the machine violated OSHA standards.

Contrary to the trial judge's ruling S.C. Code Ann. § 15-73-20 (1977) is not complete bar to recovery under these facts. Whether Fleming's continued use of the product after discovering the defect was reasonable was a jury question. *See e.g. State v. Wickenhauser*, ___ S.C. ___, 423 S.E. (2d) 344 (1992) (whether officer gave *reasonable* assistance was question of fact for jury). We, therefore, reverse the trial judge's grant of summary judgment in favor of Woodman and remand for trial the products liability cause of action.

## B. *Breach of Contract*

A central issue to the breach of contract cause is the nature of the employment relationship between Fleming and Borden. Fleming claims that the handbook Borden originally issued created a contract of employment. Borden claims that even if the original handbook created a contract of employment, the amended handbook issued in 1985 controlled. The 1985 handbook contained a disclaimer. The issue at trial was whether an employment contract existed between Borden and Fleming, and, if so, whether Borden breached the contract. The jury found for Borden.

Fleming claims the trial judge erred in submitting the question of the existence of a contract to the jury. She contends the trial judge should have ruled that as a matter of law, the amended handbook did not constitute a contract. Under such a ruling, she would have been entitled to a directed verdict on Borden's liability inasmuch as Borden conceded that it had not followed the original handbook provisions when it terminated Fleming. In *Small v. Springs Industries*, 292 S.C. 481, 357 S.E. (2d) 452 (1987), we upheld the trial judge's refusal to grant summary judgment in favor of the employer holding that "[I]t was for the jury to decide whether the handbook . . . constituted an employment contract." *Id.* at 483, 357 S.E. (2d) at 454. Thus, the trial judge properly submitted the question of the existence of an employment contract between Borden and Fleming to the jury. We affirm.

Next, Fleming claims that Borden could not unilaterally amend the contract of employment created by the original handbook. We have not directly addressed whether an employer may modify a contract created by an employee handbook with a subsequent employee handbook. The United States District Court, District of South Carolina, has addressed this issue twice with differing results. *Adams v. Square D Co.,* 775 F. Supp. 869 (D.S.C. 1991); *Compare Toth v. Square D Co.*, 712 F. Supp. 1231 (D.S.C. 1989).

Under South Carolina law, the contract of employee created by an employee handbook is a unilateral contract. *Miller v. Schmid Lab. Inc.*, 307 S.C. 140, 414 S.E. (2d) 126 (1992). Under a unilateral contract, there is "no mutuality of obligation; there is only one promisor and one promisee for whom the contract creates a legally enforceable

right." *Toth v. Square D Co.*, 712 F. Supp. 1231, 1235 (D.S.C. 1989) (citing 1 *Corbin on Contracts* § 21 (1963). Under older common law, a unilateral contract could be terminated or modified by the promisor at any time prior to completion of performance. E. Allan Farnsworth, *Contracts* § 3.24 (1982). This rule, of course, proved unduly harsh to the promisee. *Id.* Under the modern law of contracts, the promisor does not enjoy the unfettered right to modify or terminate a unilateral contract prior to completion. *See Id.*

Courts addressing the validity of a unilateral modification of contract of employment created by the employee handbook have taken three widely varying approaches. *See* Stephen F. Befort, *Employee Handbooks and the Legal Effect of Disclaimers,* 13 Indus. Rel. L.J. 326 (1991/1992). The United States District Court, District of Arizona, applying Arizona law held the "inclusion of a disclaimer in the [subsequent] publication may best be considered an offer of modification to a unilateral contract of employment, which plaintiff accepted by continuing her employment with the defendant." *Chambers v. Valley Nat'l Bank,* 721 F. Supp. 1128, 1131-32 (D.Ariz 1988). *Chambers,* thus, allows modification or termination of an implied contract of employment in the same manner as the contract was created. *See* Stephen F. Befort, *Employee Handbooks and the Legal Effect of Disclaimers,* 13 Indus. Rel. L.J. 326 (1991/1992). A more middle-of-the-road approach was taken by the New Jersey court in *Preston v. Claridge Hotel & Casino, Ltd.,* 231 N.J. Super. 81, 555 A. (2d) 12 (Super. Ct. App. Div. 1989). In *Preston,* the court held that in order for a subsequent disclaimer in an employee handbook to be effective, it must be sufficiently communicated to the employee. The third approach relies on bilateral contract concepts and requires mutual assent and additional consideration. *See Toth v. Square D Co.,* 712 F. Supp. 1231 (D.S.C. 1989).

In *Toth v. Square D Co.,* 712 F. Supp. 1231 (D.S.C. 1989), Judge Henderson held that "[w]hether the plaintiffs accepted the terms of the revised handbook by continuing to work for the defendant after receiving, and in some cases actually reading, that handbook is a question of fact for the jury to decide." *Id.* at 1236. In *Adams v. Square D Co.,* 775 F. Supp. 869 (D.S.C. 1991) Judge Anderson criticized *Toth* as applying bilateral contract concepts to a unilateral contract. In *Adams,*

Judge Anderson held "the 1986 handbook, including the disclaimer was an effective amendment to the old handbook. This post hire amendment was effective against Adams. The disclaimer makes it clear that he was simply an employee at-will." *Id.* at 873.

*Adams* has been cited for the proposition that employers may terminate an implied contract of employment by unilaterally issuing a subsequent handbook containing a disclaimer, the *Chambers* approach. *See* Thomas R. Haggard, *Employee Handbooks—Still Evolving in South Carolina Law,* S.C. Law 23 (Sept./Oct. 1993). *Toth's* bilateral approach is at the opposite end of the spectrum.[5] We decline to follow either.

In *Small I,* we recognized that there are " 'strong equitable and social policy reasons militating against allowing employers to promulgate for their employees potentially misleading personnel manuals while reserving the right to deviate from them at their own caprice.' *Walker v. Westinghouse Elec. Corp.,* 77 N.C. App. 253, 259, 335 S.E. (2d) 79, 83 (1985). 'Having announced the policy, presumably with a view to obtaining the benefit of improved employee attitudes and behavior and improved quality of the work force, the employer may not treat its promise as illusory.' *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 619, 292 N.W. (2d) 880, 895 (1980)." *Small I,* 292 S.C. at 485, 357 S.E. (2d) at 454. Today, we reaffirm our commitment to the principles enunciated in *Small I.* We recognize, however, that the employer-employee relationship is not static. Employers must have a mechanism which allows them to alter the employee handbook to meet the changing needs of both business and employees. Thus, we reject the bilateral concepts enunciated in *Toth.* Likewise, we

---

[5]We characterize *Toth* and *Adams* in the same manner as several commentators in order to illustrate different approaches courts have used when addressing modifications in subsequent employee handbooks. *See e.g.* George L. Blum, Annotation, *Effectiveness of Employer's Disclaimer of Representations in Personnel Manual or Employee Handbook Altering At-Will Employment Relationship,* 17 ALR 5th 1 (1994); Thomas R. Haggard, *Employee Handbooks—Still Evolving in South Carolina Law,* 5 S.C. Law. 23 (Sept./Oct. 1993). The specific holding in *Toth* was that a jury question was created as to whether the disclaimer found in the subsequent handbook was effective as to the plaintiffs. In Adams, the plaintiff wrote portions of the revised handbook. Thus, *Adams* had actual knowledge of the modification. The bilateral contract discussion in *Toth* was dicta. In our view, both *Toth* and *Adams* can be read as consistent with our opinion today.

find the *Adams* mechanical approach based purely on whether the subsequent disclaimer is conspicuous equally unpersuasive.

We hold that the implied contract of employment created by an employee handbook may be modified by a subsequent employee handbook. To be effective, however, the employee must have reasonable notice of the modification. *See* E. Allan Farnsworth, *Contracts* § 3.24 (1982). In the employment context, the reasonable notice requirement for modification requires actual notice to the employee. *Preston v. Claridge Hotel & Casino, Ltd.*, 231 N.J. Super. 81, 555 A. (2d) 12 (Super. Ct. App. Div. 1989).

Whether the employer has provided actual notice of a modification of the employment contract created by an employee handbook in most cases will be for the jury to determine. *Id.* Where, as here, the employee admitted received the handbook but claimed she was not notified that the new handbook contained significant changes, a question of fact was created as to whether Fleming received actual notice of her change to employee at-will status. *See e.g. id.* Thus, this issue was properly submitted to the jury. We affirm.

Having determined that an employer may modify an employment contract created by a handbook to the point of extinguishing the contract of employment by issuing a subsequent handbook, we now turn to Flemings' contention regarding the validity of the disclaimer in the subsequent employee handbook. Fleming argues that the trial judge should have directed a verdict in her favor and ruled as a matter of law that the disclaimer in the 1985 handbook was not conspicuous. We disagree.

> [T]he disclaimer is merely one factor to consider in ascertaining whether the handbook as a whole conveys credible promises that should be enforced. . . . The disclaimer, which necessarily militates against enforcement, should be weighed in the balance along with other handbook provisions. . . . [A] handbook that contains both promissory language and a disclaimer should be viewed as inherently ambiguous. Thus, . . . the entire handbook, including any disclaimer, should be considered in determining whether the handbook gives rise to a promise, and expectation and a benefit.

As with any question of fact, this is primarily a matter for the jury to decide. The court should intervene to resolve the handbook issue as a matter of law only if the handbook statements and the disclaimer, taken together, establish beyond any doubt tha[t] an enforceable promise either does or does not exist.

Stephen F. Befort, *Employee Handbooks and the Legal Effect of Disclaimers*, 13 Indus. Rel. L.J. 326, 375-76 (1991-92). In most instances, summary judgment is inappropriate when the handbook contains both a disclaimer and promises. There may be, however, cases when summary judgment is appropriate. *See e.g. Adams v. Square D*, 775 F. Supp. 869 (D.S.C. 1991) (plaintiff/manager actually wrote handbook per instructions of employer with intent to disclaim contract of employment); *see also Marr v. City of Columbia*, 307 S.C. 545, 416 S.E. (2d) 615 (1992); *Johnson v. First Carolina Financial Corp.*, 305 S.C. 556, 409 S.E. (2d) 804 (Ct. App. 1991). Here, the modified employee handbook contained a disclaimer. The handbook also contained procedures on which Fleming claims she relied. We cannot say that the disclaimer was so inconspicuous as to be ineffective as a matter of law.[6]

Fleming additionally claims that because Judge Stephen denied Borden's prior motion for summary judgment on the disclaimer issue, the disclaimer was not sufficiently conspicuous as a matter of law thus entitling her to summary judgment.

---

[6]Fleming relies on *Hannah v. United Refrigerated Services*, ___ S.C. ___, 430 S.E. (2d) 539 (Ct. App. 1993). In *Hannah, supra*, the Court of Appeals applied the Uniform Commercial Code ("UCC") definition of "conspicuous" by analogy. Under the UCC definition of "conspicuous," the trial judge rather than the jury is to make the determination of whether a notice is "conspicuous." In *Kumpf v. United Telephone Co. of the Carolinas*, ___ S.C. ___, 429 S.E. (2d) 869 (Ct. App. 1993), the Court of Appeals looked at the UCC definition of conspicuous in order to determine whether the trial judge's denial of summary judgment to the employer was correct. The Court of Appeals recognized in *Kumpf, supra*, that the UCC is inapplicable in employment cases. In *Johnson v. First Carolina Financial Corp.*, 305 S.C. 556, 409 S.E. (2d) 804 (Ct. App. 1991), Judge Bell recognized that under *Small I*, an employer was free to issue an employee handbook without being bound by it by placing a conspicuous disclaimer in the handbook. In *Johnson, supra*, the issue was whether the employer "showed the absence of a genuine issue of material fact so as to be entitled to summary judgment." *Id.* at 559, 409 S.E. (2d) at 805. *Johnson* implicitly recognized that the question of whether a disclaimer is conspicuous is a fact question.

We disagree. Judge Stephen denied summary judgment to Borden and held that the disclaimer was not as conspicuous as the disclaimer in *Johnson, supra*. Judge Stephen did not, however, rule as a matter of law that the disclaimer was so inconspicuous as to be ineffective. We affirm.

Finally, Fleming claims that the trial judge erred in directing a verdict in favor of th defendants Owens and Rogers.

All of the claims against Owens and Rogers depend on there existing an employment contract with Borden which was breached causing Fleming damages. As the jury found in favor of Borden, Owens and Rogers could not have tortiously interfered with a contract which either did not exist or was not breached. We affirm.

Affirmed in part and reversed in part.

CHANDLER, Acting C.J., FINNEY, J., and L. HENRY McKELLAR, Acting Associate Justice, concur.

HARWELL, C.J., not participating.