Michael J. REESE, Plaintiff,

v.

COMMERCIAL CREDIT CORPORATION, Defendant.

CA No. 6:96–2107–20AK.

United States District Court, D. South Carolina, Greenville Division.

Feb. 28, 1997.

W. Andrew Arnold, Greenville, SC, for plaintiff.

Susan E. Sykes and Ellison F. McCoy, Greenville, SC, for defendant.

## ORDER

HERLONG, District Judge.

This matter is before the court with the Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b) and Local Rule 19.02 DSC. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

Michael J. Reese ("Reese") is suing his former employer, Commercial Credit Corporation ("Commercial Credit"), for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. Commercial Credit alleges that Reese is contractually bound to arbitrate all claims. Accordingly, Commercial Credit filed a motion to compel arbitration and dismiss the complaint. In his Report and Recommendation, United States Magistrate Judge William M. Catoe, Jr. recommends that the court deny Commercial Credit's motions.

### I.

Commercial Credit hired Reese on August 5, 1991. In September, 1992, Commercial Credit adopted a two-part grievance policy ("the Policy"). (Wade Aff. Ex. 1.) Under the Policy, employment and termination disputes are first reviewed internally under the "Dispute Resolution Procedure." *Id.* If the dispute is not resolved at this stage, the parties must submit to binding arbitration pursuant to the "Employment Arbitration

Policy" ("Arbitration Policy"). *Id.* The Arbitration Policy is based on the Model Employment Arbitration Procedures of the American Arbitration Association. *Id.* Ex. 3, p. 1. The Arbitration Policy makes arbitration the "required, and exclusive, forum for the resolution of all employment disputes." *Id.*

Commercial Credit used two methods to distribute the Policy to its employees. It included the Policy in its employee handbooks issued in September, 1992, and October, 1994. It also mailed copies of the Policy to its employees. The front cover of the September handbook contained the following disclaimer:

> This handbook does not constitute a guarantee that your employment will continue for any specified period of time or end only under certain conditions. Employment at Primerica is a voluntary relationship for no definite period of time, and nothing in this handbook or any other company document constitutes an express or implied contract of employment.

(Wade Aff. Ex. 4.) A similar disclaimer was inserted in the second paragraph of the Arbitration Policy. *Id.* Ex. 3, p. 1.

On May 31, 1995, Commercial Credit fired Reece. Reece filed this action on July 22, 1996.

## II.

■ The Federal Arbitration Act ("FAA") reflects a strong federal preference toward enforcing arbitration agreements.[1] *E.g. Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). Under the FAA, parties can petition the federal courts to enforce arbitration agreements. 9 U.S.C. § 4. If the court finds the issue arbitrable, it must stay or dismiss the claim. 9 U.S.C. §§ 3, 4; *Cherry*, 868 F.Supp. at 836 (citation omitted).

■ In determining whether to compel arbitration of this employment dispute, the court must consider: (1) whether the parties have made an agreement to arbitrate; (2) the scope of the agreement; (3) whether the federal statutory claims are arbitrable. *See Topf v. Warnaco, Inc.*, 942 F.Supp. 762, 765 (D.Conn.1996) (citing *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2nd Cir.1987)); *see also, Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 626–27, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1984).

### A. Agreement to Arbitrate

■ Arbitration is a matter of contract, and the court can only compel arbitration if the parties have agreed to arbitrate. *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, ———–———, 115 S.Ct. 1920, 1923–24, 131 L.Ed.2d 985 (1995) (citations omitted). Therefore, the court must first determine whether a valid arbitration agreement exists. *See id.* In making this determination, the court must apply ordinary principles of South Carolina contract law. *Id.*

■ South Carolina courts apply a unilateral contract analysis to most employment agreements. *Small v. Springs Indus., Inc.*, 292 S.C. 481, 357 S.E.2d 452, 454 (1987); *see also Fleming v. Borden, Inc.*, 316 S.C. 452, 450 S.E.2d 589, 595 (1994). Essentially, unilateral contract analysis makes it possible for a court to find an implied contract between an employer and employee even though the elements of a contract are somewhat elusive. Under this analysis, the employer is the offeror and the employee handbook and other publications or promises constitute the offer. *Small*, 357 S.E.2d at 454. The employee accepts the offer by continuing to work, and the employee's action or forbearance is consideration. *Id.*

Strictly following the above reasoning, some states allow modification of an implied employment contract in the same manner.

---

1. In his memorandum in opposition to Commercial Credit's motion to compel arbitration, Reece argues that under a broad reading of 9 U.S.C. § 1, his employment is not subject to the FAA. However, this controversial exclusion should be narrowly interpreted to apply only to those employees actually engaged in the transportation industry. *E.g. Cherry v. Wertheim Schroder and Co., Inc.*, 868 F.Supp. 830, 834–35 (D.S.C.1994).

*Fleming,* 450 S.E.2d at 594–95 (citing *Chambers v. Valley Nat'l Bank,* 721 F.Supp. 1128 (D.Ariz.1988)). Accordingly, these states hold that merely including a disclaimer in a subsequent handbook can alter the employment relationship if the employee accepts the offer by continuing to work. *Id.* In contrast, the South Carolina Supreme Court held that to modify an implied employment contract with a subsequent handbook, the employer must give the employee actual notice of the modification. *Fleming,* 450 S.E.2d at 595–96.

■ The court recognizes that Reece is not arguing that Commercial Credit's employee handbook or other policies created an implied contract. Nevertheless, the court believes that the South Carolina Supreme Court would apply the same actual notice requirement to an employer's implementation of an arbitration agreement. The equitable considerations involved in the implementation of an arbitration policy are as compelling as those involved in the insertion of a disclaimer in a subsequent employee handbook. It is not too much to ask an employer to provide actual notice to its employees before significantly restricting rights created by decades of state and federal legislation.

■ The record in this case indicates that Reece did receive actual notice of the Arbitration Policy. Commercial Credit mailed the Arbitration Policy to Reece with a letter that carefully explained the new policy[2]. *See* (Wade Aff. Ex. 1) (explaining in the letter that "we and you agree that within one year of the date that the dispute arose, any remaining disputes will be submitted to binding arbitration"). The Arbitration Policy accompanying the letter also clearly stated that it "makes arbitration the required, and exclusive, forum for the resolution of all employment disputes." *See* (Wade Aff. Ex. 3, p. 1.) Nevertheless, Reece argues that he was mis-

lead by the paragraph on the first page of the Arbitration Policy that reaffirmed the at-will nature of the employment relationship. The court finds that no reasonable person could conclude that this paragraph somehow negates the mandatory nature of the Arbitration Policy. This paragraph clearly concerned only the employee's at-will status.

■ Finally, Reece's continued employment bound the parties to the agreement. *See Small,* 357 S.E.2d at 454. Having found that the mailed Arbitration Policy formed the basis for an enforceable arbitration agreement, the court need not consider whether the inclusion of the Arbitration Policy in the employee handbook also bound the parties.

### B.   Scope and Applicability of the Arbitration Policy

■ Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Cherry,* 868 F.Supp. at 834 (citing *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985)). The scope of Commercial Credit's Arbitration Policy is very broad, and it unquestionably encompasses Reece's FMLA and ADA claims. *See* (Wade Aff. Ex. 3, p. 1.) Additionally, the court agrees with the magistrate judge's conclusion that Reece's FMLA and ADA claims are arbitrable[3]. (Mag. Judge's Rep. & Rec. at 3–4.)

### III.

For the foregoing reasons, the court finds that Reece must arbitrate his claims. The court incorporates only those portions of the Report and Recommendation which are consistent with this opinion. Accordingly, it is

**ORDERED** that Commercial Credit's motion to dismiss the complaint is granted. Its is further

---

**2.** In *Fleming,* the court stated that the validity of a handbook modification was a question for the jury where the new, modified handbook was distributed to employees without any notification that it contained significant changes. *Fleming,* 450 S.E.2d at 596. The instant case is inapposite. Commercial Credit not only distributed the Arbitration Policy directly to its employees, but it

also included an explanatory letter notifying the employees of the new policy.

**3.** The court also notes that Reece did not object to the magistrate judge's conclusion that the FMLA and ADA claims were arbitrable.

**ORDERED** that Reece submit his claims to binding arbitration pursuant to the Arbitration Agreement.