Roger DEMASSE, et al., Plaintiffs,

v.

ITT CORPORATION, Defendant.

No. Civ–94–1399–PHX–ROS.

United States District Court,
D. Arizona.

May 24, 1995.

Order Denying Motion to Amend
March 4, 1996.

Jack C. Levine, Phoenix, AZ, James W. Hill, Phoenix, AZ, for plaintiffs.

Teresa D. Forst, John Alan Doran, Bryan Cave McPheeters & McRoberts, Phoenix, AZ, for defendant.

## ORDER

SILVER, District Judge.

On February 3, 1994, Plaintiffs filed a Complaint with this Court. On July 11, Judge Strand issued an order severing the original case into three separate actions, one of which is the instant case. In this case Plaintiffs allege that they were laid off in breach of a contract provision requiring that layoffs be carried out according to seniority. This Court has jurisdiction under 28 U.S.C. § 1332.

On November 16, 1994, Plaintiffs filed a Motion to Amend the Complaint. An Amended Memorandum of Law was filed on December 15, 1994. On February 14, 1995

Defendant ITT filed a Motion to Sever. Also on February 14, 1995, Defendant ITT filed six separate Motions for Summary Judgment, one against each of the Plaintiffs in this case. The Plaintiffs are Roger Demasse, Billy W. Jones, Greg Palmer, Maria A. Garcia and Socorro Soza. Defendants responded and filed a Cross–Motion for Summary Judgment on March 10, 1995. A hearing was held on the Motions on May 22, 1995.

## Background

This action arises from layoffs at ITT's Phoenix facility caused by the decrease in expenditures by the Federal Government for Defense. (DSOFI at ¶ 2, 3; DSOFII at ¶ 2, 3; DSOFIII at ¶ 2, 3; DSOFIV at ¶ 2, 3; DSOFV at ¶ 2, 3; DSOFVI at ¶ 2, 3)[1] Between January 1990 and May 1992, ITT reduced the number of hourly production workers from 132 to 68. (DSOFI at ¶ 4; DSOFII at ¶ 4; DSOFIII at ¶ 4; DSOFIV at ¶ 4; DSOFV at ¶ 4; DSOFVI at ¶ 4) Further layoffs were necessary in 1993 and decreased the labor force to 49. (DSOFI at ¶ 6; DSOFII at ¶ 6; DSOFIII at ¶ 6; DSOFIV at ¶ 6; DSOFV at ¶ 6; DSOFVI at ¶ 6) In 1994 the labor force was decreased to 36. (DSOFI at ¶ 6; DSOFIV at ¶ 6) It is the layoffs in these last two years that form the subject matter of the instant case.

Plaintiffs Roger Demasse, Socorro Soza and Greg Palmer were laid off on April 29, 1993. (DSOFII at ¶ 23; DSOFIII at ¶ 23; DSOFVI at ¶ 22) Next, Plaintiff Viola Munguia was laid off on May 4, 1993. (DSOFV at ¶ 17) Finally, Plaintiffs Billy W. Jones and Maria Garcia were laid off on January 10, 1994. (DSOFI at ¶ 22; DSOFIV at ¶ 23)

## Did the ITT Handbooks Issued to the Employees create an "Implied in Fact Contract?"

■ In *Leikvold v. Valley View Community Hosp.*, 141 Ariz. 544, 548, 688 P.2d 170, 174 (1984), the Arizona Supreme Court held that if an employer issues a personnel policy manual or handbook upon which its employees may reasonably rely, the employer may not treat the contents of these documents as illusory. Consequently, the contents of a personnel manual or handbook can become part of an enforceable contract of employment. *See also, Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 381–382, 710 P.2d 1025, 1036–37 (1985); *Thomas v. Garrett Corp.*, 744 F.Supp. 199, 201 (D.Ariz.1989) *aff'd* 904 F.2d 41, 1990 WL 71468 (9th Cir.1990); *Chambers v. Valley Nat'l Bank*, 721 F.Supp. 1128, 1131 (D.Ariz. 1988); *Bedow v. Valley National Bank*, CIV 88–417 PCT RCB (D.Ariz. Oct. 6, 1988). Whether the handbook creates an implied contract depends on the language in the handbook as well as the course of conduct of the employer. *Leikvold*, 141 Ariz at 548, 688 P.2d at 174.

■ A related issue is whether the terms of an employment contract created by one handbook can be superseded by a subsequent handbook. The *Chambers* court held that the parties were free to change the terms of an employment contract at any time. *Chambers*, 721 F.Supp. at 1131, citing *Wagner v. City of Globe*, 150 Ariz. 82, 85–86, 722 P.2d 250, 253–54 (1986). The decision of the employee to continue to work for the employer is consideration for the change. *Id.* at 1131–32, citing *Mattison v. Johnston*, 152 Ariz. 109, 112–13, 730 P.2d 286, 289–90 (Ct.App. 1986).[2] Chaos would result if the employer

---

**1.** The abbreviations used are: DSOF—Defendant ITT Cannon's Statement of Undisputed Facts in Support of Its Motion for Summary Judgment; if no roman numeral is appended the information is found in the same paragraph of the Facts for each Plaintiff; DSOFI is for the motion against Plaintiff Billy W. Jones; DSOFII is for the motion against Plaintiff Roger Demasse; DSOFIII is for the motion against Plaintiff Greg Palmer; DSOFIV is for the Motion against Plaintiff Maria A. Garcia; DSOFV is for the motion against Plaintiff Viola Munguia; DSOFVI is for the motion against Plaintiff Socorro Soza; PSOF is Plaintiffs' Statement of Facts in Opposition to Defendant's Motion for Summary Judgment and

in Support of Plaintiffs' Cross–Motion for Summary Judgment.

**2.** It is noted that some courts have required more proof that the employee accepted the new contract than merely continuing to work. *Thompson v. Kings Entertainment Co.*, 653 F.Supp. 871, 876 (E.D.Va.1987); *Toth v. Square D Co.*, 712 F.Supp. 1231, 1236–37 (D.S.C.1989) which has been in *Fleming v. Borden Inc.*, —— S.C. ——, 450 S.E.2d 589 (1994) criticized as applying bilateral contract concepts to a unilateral contract. In *Fleming* the court held that mere actual notice was necessary to modify the contract.

was bound by prior handbooks and employees hired at different times when different handbooks were in effect were under different contracts. *Bedow v. Valley National Bank.*

Plaintiffs challenge their layoffs as breaches of seniority provided for in their employment contracts. They claim that pre–1989 employee handbooks created an employment contract between them and ITT under which layoffs would be made by seniority. (DSOFI ¶ 32; DSOFII at ¶ 30; DSOFIII at ¶ 38; DSOFIV at ¶ 30; DSOFVI at ¶ 29).

In the instant case, the pre–1989 employee handbooks stated that employees would be selected for layoff by their length of service. (DSOF at ¶ 8; PSOF at ¶ 2) Defendants do not dispute that these pre–1989 handbooks create a contract term requiring layoffs to be made according to seniority. Significantly, the pre–1989 handbooks do not contain language that clearly and conspicuously informed the employees that the handbook was *not* part of the employment contract and that their jobs were terminable at the will of the employer with or without reason. (DSOF at ¶ 8, Ex. E).

A revised handbook was published in 1989. (DSOF at ¶ 9; PSOF at ¶ 4) This handbook also stated that layoffs would be carried out according to seniority. (p. 36 of Exhibit F to DSOF; PSOF at ¶ 2) However, on page one of the new handbook there was a disclaimer stating that the contents shall not be construed as a guarantee of continued employment, and that ITT reserves the right to layoff employees. (DSOF at ¶ 10) The first page also states that ITT reserved the right to amend, modify or cancel the handbook or the policies rules or procedures contained in it. (DSOF at ¶ 11; PSOF at ¶ 4). Finally, the new handbook stated that the specific "provisions of policies, rules, procedures and programs supersedes the contents" of the handbook. (DSOF Exhibit F at page 1).

All of the Plaintiffs signed a receipt for the new 1989 handbook stating that they had received the handbook understood that it was their responsibility to read it, comply with its contents, and contact Personnel if they had any questions concerning the contents. (DSOFI at ¶ 12; DSOFII at ¶ 12; DSOFIII

at ¶ 12; DSOFIV at ¶ 12; DSOFV at ¶ 12; DSOFVI at ¶ 12). In addition Jones (DSOFI at ¶ 13) Palmer (DSOFIII at ¶ 13) and Soza (DSOFVI at ¶ 13) admitted that they read the handbook including the disclaimers on page one. Jones (DSOFI at ¶ 16) Demasse (DSOFII at ¶ 18), Garcia (DSOFIV at ¶ 17) and Soza (DSOFVI at ¶ 16) admitted that they understood that ITT had the right to amend modify or cancel provisions in the handbook. Munguia admits that in May 1989 she was advised that ITT Cannon was reserving the right to "amend modify or cancel" the handbook "as well as any or all of the various policies, rules, or procedures and programs within it". (Munguia Affidavit at ¶ 7) It is therefore clear that Plaintiffs continued to work for Defendant after they had read or were aware of the statement that the provisions of the handbook could be changed.

■ The first issue is whether, as Defendant claims, the statements in both the handbooks "conspicuously tells [ITT's] employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason," *Leikvold,* 688 P.2d at 174. Neither of the handbooks i.e., the pre–1989 contract or the 1989 contract satisfy this requirement. Nowhere in the handbooks does the language appear that the employment relationship was "at will". *See, Bedow v. Valley National Bank.* Also, in *Thomas v. Garrett Corp,* relied upon by the Defendants, the employee had completed and signed a *separate* employment contract stating that his employment contact was terminable at will by either party. In particular immediately above the place for the applicant's signature there was a notice to "PLEASE READ CAREFULLY" and text which followed which made clear that the company could terminate him with or without cause and with or without notice at any time. Finally, in *Chambers v. Valley National Bank,* also relied upon by the Defendants, the handbooks contained distinct disclaimers prominently displayed in their introductory paragraphs which plainly communicated that the handbook was only a guideline and that they did "NOT CONSTITUTE THE TERMS OF A CONTRACT OF EMPLOY-

MENT." Further the handbooks stated that nothing in the handbook should be construed as a guarantee of continued employment, but employment was at will.

The handbook language in the instant case contains no such clear and conspicuous language. The statement that "ITT Cannon does not guarantee continued employment to employees and retains the right to terminate or layoff employees" (DSOF, exhibit F, p. 1) could be read to mean that termination or layoff will always be completed according to the terms provided in the handbook. It does not "conspicuously tell" the employee that the handbook does not create an employment contract as were the facts in *Bedow, Garrett Corp.*, and *Chambers*. Nor does the statement "ITT Cannon reserves the right to amend, modify or cancel this handbook, as well as any or all of the various policies rules procedures and programs outlined within it" (DSOF exhibit F at p. 1) "conspicuously tell" the employee that the manual is not part of the employment contract.

Thus, as in *Leikvold* where entry of summary judgment was inappropriate "[b]ecause a material question—whether the policy manual was incorporated into and became part of the terms of the employment contract—remain in dispute" summary judgment is inappropriate here. Id. at 174. As the Supreme Court of Arizona held in *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985) the general rule is that the determination whether in a particular case a promise should be implied in fact is a question of fact and where reasonable minds may draw different conclusions or inferences from undisputed evidentiary facts, a question of fact is presented. *See also, Loffa v. Intel Corp.,* 153 Ariz. 539, 544, 738 P.2d 1146, 1151 (Ariz.App.1987) (The court held that the general statement in the "Employee Agreement" that "[t]his Agreement . . . does not in any way restrict my right or the right of Intel to terminate my employment . . ." is not enough to remove the issue of the effect of Intel's "Non Exempt Disci-

pline Policy" on the employment relationship from the jury's consideration.)

This Court finds that reasonable persons could differ on the inferences and conclusions they might draw on whether Defendant's handbook became a part of the Plaintiffs' employment contracts.

**Assuming that both the Handbooks Were a Part of the Plaintiffs/Employees Contracts did the Defendant's Breach the Contracts?**

■ The first issue is whether the terms in the new 1989 handbook mean that the terms of the older handbooks no longer apply. This question is answered in the affirmative under the interpretation of Arizona law in *Chambers* as set forth above. It is clear from the facts that the employees were aware of or read the terms of the 1989 handbook which allowed ITT to amend, modify or cancel the handbook and then they continued their employment.[3] Plaintiffs now generally state, however, that they did not understand that the new provisions of the handbook amended or cancelled their seniority benefits which they purported earned in previous years and that Defendant breached the contract by changing the layoff procedure to one based on performance. The Plaintiffs argue that the length of time that the seniority policy existed created "benefits" which could not be taken by mere modification of the handbook. Plaintiffs cite no Arizona case law to support their position. What is more, *Chambers* holds otherwise. (PSOF at ¶ 4)

The Restatement (Second) of Contracts § 202(3) states:

(a) where language has a generally prevailing meaning, it is interpreted in accordance with that meaning;

(b) technical terms and words of art are given their technical meaning when used in a transaction within their technical field.

"Whether a contract is ambiguous or uncertain is a question of law and the mere fact that the parties disagree as to the meaning of its terms does not, in and of itself, establish

---

3. Courts have held that mere notice of change is enough for a unilateral contract. *Rowe v. Montgomery,* 437 Mich. 627, 473 N.W.2d 268 (1991);

*Grow v. General Products, Inc.,* 184 Mich.App. 379, 457 N.W.2d 167 (1990).

its ambiguity." *Grossman v. Hatley,* 21 Ariz.App. 581, 585, 522 P.2d 46, 50 (1974). Finally, in *Leikvold,* 141 Ariz. at 548, 688 P.2d at 174 although the court reversed the finding by summary judgment that the manuals did not create an implied in fact contract the court instructed that if on remand the court found that the "terms of [the] agreement [were] clear and unambiguous, the construction of the contract is a question of law for the court."

In the instant case assuming that the handbooks created an implied in fact contract it is clear that the 1989 amendment plainly allowed ITT Cannon to make *any* amendments to the handbook deemed appropriate as long as certain procedures were followed. Thus, the Court finds that the 1989 revision of the handbook allowed ITT Cannon to amend the provision relating to layoffs. The 1989 revision was then followed by the 1993 revision which plainly states that it is a "REVISED LAYOFF POLICY" which "supersedes" the Handbook. There is no reasonable inference which can be drawn from a reading of these provisions but that whatever layoff policy existed prior to 1993 was changed and authorized by the 1989 amendment to the handbook and approved by the Plaintiffs.

Even if this Court were to consider extrinsic evidence to interpret the meaning of the handbook, as authorized in *Taylor v. State Farm Mutual Automobile Ins. Co.,* 175 Ariz. 148, 854 P.2d 1134 (1993) adopting the Corbin view of contract interpretation, the result would be the same. Plaintiffs' merely offer, *without explanation,* that they just did not interpret the provision reserving the right "to amend, modify or cancel" the Employees Handbook, "as well as any or all of the various policies, rules procedures and programs outlined within it" as permitting ITT Cannon to cancel their seniority and layoff policies. (¶ 8 of the Affidavits of Demasse and Garcia and ¶ 7 of all other Plaintiffs). In particular in Plaintiff Maria Garcia's deposition the following colloquy occurred:

Question: What is in page one that led you to believe that ITT Cannon could not change its layoff policy?

Answer: The very first part of that paragraph where it says "quote within the limits allowed by law."

Question: What leads you to believe that phrase did not allow ITT Cannon to change its layoff policy?

Answer: Back to the seniority, you know. How can they take our seniority like that you know?

Question: So the phrase you are referring to is within the limits allowed by law, correct? Is there a particular law that you are referring to, that you believe that kept ITT Cannon from changing the layoff policy?

Answer: Yes, because it is wrong just to change like this.

Question: Do you think the law—

Answer: Yeah. They can do it, but it's wrong.

Question: You stated they can do it, but its wrong?

Answer: We can do anything we want, right, but is it right?

Question: Are you aware of any law that prohibited ITT Canon from changing their layoff policy?

Answer: I'd rather not answer that.

The statement that "[a]ny amendment or modification will be communicated to the affected employees, and, while the handbook provisions are in effect, will be consistently applied," (DSOF exhibit F at p. 1), is a contract term allowing the contract provisions to be changed only by a specific procedure. The question is therefore whether Defendant ITT followed the steps required in the contract provision.

On March 18, 1993, ITT issued a revised layoff policy that specifically stated that it superseded prior handbooks. (DSOFI at ¶ 18; DSOFII at ¶ 19; DSOFIII at ¶ 19; DSOFIV at ¶ 18; DSOFV at ¶ 14; DSOFVI at ¶ 17; PSOF at ¶ 3) This policy stated that work reductions were now to be based on abilities and documented performance. (DSOFI at ¶ 18–19; DSOFII at ¶ 19–20; DSOFIII at ¶ 19–20, DSOFIV at ¶ 18–19; DSOFV at ¶ 14–15; DSOFVI at ¶ 18) Plaintiffs received copies of this policy. (DSOFI at ¶ 21; DSOFII at ¶ 22; DSOFIII at ¶ 22;

DSOFIV at ¶ 21) Thus, the contractual requirement that the change be communicated to the affected employee was met. Plaintiffs do not claim that the other contractual requirement, that the new policy be consistently applied, was not met.

It follows that as a matter of law assuming that the handbooks created an implied in fact contract Defendant did not breach the contract. Summary Judgment is therefore granted.

### Did the Employees fail to exhaust grievance procedures?

■ Federal Courts have held that, under Arizona law, an employee is barred from pursuing civil remedies until she has exhausted the employer's grievance procedures as described in the employee handbooks. *Moses v. Phelps Dodge Corp.*, 818 F.Supp. 1287, 1290 (D.Ariz.1993) (handbook said that the grievance procedures that it contained were the exclusive procedure for processing any dispute arising from, among other things, termination from employment); *Thomas v. Garrett Corp.*, 744 F.Supp. 199, 203 (D.Ariz.1989) (handbook provisions not described, but the court applied the provisions to a layoff). These two cases are based on *Payne v. Pennzoil Corp.*, 138 Ariz. 52, 55–56, 672 P.2d 1322, 1325–26 (Ct.App.1983), which actually deals with the requirement to arbitrate. ITT has established a complaint procedure and the procedure is contained in the 1989 and pre–1989 employee handbooks. (DSOFI at ¶ 33) The grievance procedure does not specifically say that it should be used for layoffs. There is also an ombudsman DSOFI at ¶ 34)

■ Defendants claim that Plaintiffs did not complete the complaint procedure, contained in the employee handbook, and ombudsman program provided by ITT for either the 1989 or 1993 changes in the Handbooks or when they were actually laid off. (DSOFI at ¶ 33–35; DSOF II at ¶ 31–33; DSOFIII at ¶ 39–41; DSOFIV at ¶ 31–33; DSOFVI at ¶ 30–32) However, the notice concerning the ombudsman that was sent to employees stated that the ombudsman was not intended to deal with routine personnel matters, but rather was intended to handle criminal or unethical behavior. (Exhibit J to DSOFIII; Exhibit I to DSOF I, II, IV, VI; Exhibit H to DSOFV) Plaintiffs would therefore not be expected to contact him/her about a layoff.

There is sufficient evidence to establish as a matter of law that the Plaintiffs did not complete the grievance procedure for changes in the handbook or layoffs.

Under the grievance procedure the employee first talks to his supervisor about the problem, then goes to the next level of management, then to the personnel department and then to the Division General Manager. (DSOF exhibit E at p. 22; Exhibit F at p. 24) With the exception of Munguia, Plaintiffs admitted that they did not discuss the revised handbook with the personnel department. (DSOF at ¶ 14) Plaintiffs all state that they did not discuss their layoffs with any one at ITT. (DSOFI at ¶ 33; DSOFII at ¶ 31; DSOFIII at ¶ 39; DSOFIV at ¶ 31; DSOFV at ¶ 30; DSOFVI at ¶ 30) It is therefore clear that Plaintiffs failed to exhaust grievance procedures and their claim is therefore barred on this ground as well.

It should be noted that Plaintiffs did not address the issue of exhaustion of grievance procedures in their response. Rule 56(e) of the Federal Rules of Civil Procedure states that "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Importantly, the Rule also states, "[i]f the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." *See, Schneider v. TRW, Inc.* 938 F.2d 986, 990, n. 2 (9th Cir.1991) (parties are not relieved from filing material in opposition to the other party's motion).

Clearly, as set forth above there is a basis in law for granting Defendant's summary judgment for Plaintiffs' failure to comply with the grievance procedures.

### Even if seniority is applied Munguia will not prevail.

Munguia was the least senior person in her job classification. Hence, she would have

been laid off even under the old seniority system. (DSOFV at ¶ 20) Also, she could not be considered for seniority in her previous jobs because she was least senior in one and the others no longer existed. (DSOFV at ¶ 8, 28) Therefore Munguia would not prevail even under the seniority system.

**Motion to Sever**

The Motion to Sever is denied as moot.

**Attorney's Fees Under Ariz.Rev.Stat. § 12–341.01**

Ariz.Rev.Stat. § 12–241.01 provides, in part:

A. In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees. . . .

C. Reasonable attorney's fees shall be awarded by the court in any contested action upon clear and convincing evidence that the claim or defence constitutes harassment, is groundless and not made in good faith. In making such award, the court may consider such evidence as it deems appropriate and shall receive this evidence during trial on the merits of the cause or separately, regarding the amount of such fees as it deems in the best interest of the litigating parties.

Defendants have presented no evidence that the purpose of this suit was harassment or that it was brought in bad faith, two of the required elements for awarding attorney's fees. Therefore Defendant has failed to demonstrate these requirements by clear and convincing evidence and attorney's fees will not be awarded.

**PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT**

Because Defendants Motions are granted, Plaintiffs' Cross Motion for Summary Judgment (Doc. # 71) is denied.

**PLAINTIFFS' MOTION TO AMEND THE COMPLAINT**

Plaintiffs have moved to amend their Complaint to include an action in tort for the breach of the implied covenant of good faith and fair dealing.

Motions to amend the complaint are governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a) provides that, after the responsive pleading has been filed, a party can only amend the pleading with leave of the court or permission of the adverse party, and that leave of the court shall be freely given when justice so requires. The factors that are considered in determining whether a motion for leave to amend is to be denied are whether there has been undue delay, bad faith, or a dilatory motive and whether the amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Poling v. Morgan,* 829 F.2d 882, 886 (9th Cir.1987). A motion to amend may also be denied if it will result in prejudice to the opposing party. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1387 (9th Cir.1990).

In the instant case Defendant filed an answer on July 8, 1994. Plaintiffs therefore must have leave of the Court before they can amend their Complaint. Plaintiffs' Motion is denied because it is futile.

Arizona Courts have rejected an action in tort for breach of the covenant of good faith in the employment context. *Wagenseller,* 147 Ariz. at 385–86, 710 P.2d at 1040–41 (at will contract); *Woerth v. City of Flagstaff,* 167 Ariz. 412, 808 P.2d 297, 302 n. 7 (Ct.App.1990) ("Although Woerth refers to his claim for breach of good faith and fair dealing as a claim sounding in tort, Arizona has consistently refused to recognize a tort action for breach of the implied covenant in the employment context."); *Nelson v. Phoenix Resort Corp.,* 181 Ariz. 188, 198, 888 P.2d 1375, 1385 (Ct.App.1994) ("Every Court that has considered *Wagenseller* has construed its holding to prohibit a tortious "bad faith" cause of action arising out of breach an employment agreement where no public policy is violated, whether the employee was 'at-will' or tenured by contract.").

Accordingly,

**IT IS ORDERED** that Defendant's Motions for Summary Judgment (Doc. #s 53, 55, 57, 59, 61 & 63) are granted.

IT IS FURTHER ORDERED that Plaintiffs' Cross–Motion for Summary Judgment (Doc. # 71) is denied.

IT IS FURTHER ORDERED that Defendants' Motion to Sever (Doc. # 51) is denied as moot.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Amend the Complaint (Doc. # 33) is denied.

### ORDER

On May 23, 1995, this Court granted Defendant's Motion for Summary Judgment and denied Plaintiffs' Cross–Motion for Summary Judgment. Within ten days thereafter, as provided by Federal Rule of Civil Procedure 59(e), Plaintiffs filed a Motion to Alter or Amend the Judgment. Defendant filed a Response to the Motion. On July 7, 1995, Plaintiffs filed a Reply to Defendant's Response together with a "Motion for Leave to Amend its [sic] Motion." Defendant filed a Response to Plaintiffs' Motion for Leave to Amend. Plaintiffs filed a Reply and Supplement to the Reply to their Motion for Leave to Amend.

### Governing Legal Principles

 A motion seeking reconsideration of a summary judgment is appropriately brought under Federal Rule of Civil Procedure 59(e). *Backlund v. Barnhart,* 778 F.2d 1386, 1388 (9th Cir.1985). Such a motion, however, may not be used to relitigate old matters or to raise arguments or present evidence that could have been raised prior to entry of judgment. 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2810.1 at 127–28. Motions under Rule 59(e) have been granted upon four basic grounds. First, the movant may demonstrate that reconsideration is necessary to correct manifest errors of law or fact upon which the judgment was based. *F.D.I.C. v. World University, Inc.,* 978 F.2d 10 (1st Cir. 1992). Second, the motion may be granted so that the moving party may present newly discovered previously unavailable evidence. *Id.* Third, the motion will be granted if necessary to prevent manifest injustice. *Database America, Inc. v. Bellsouth Advertising & Pub. Corp.,* 825 F.Supp. 1216 (D.N.J.

1993). Fourth, the motion may be justified by an intervening change in the controlling law. *Id.*

### Analysis

A. *Plaintiffs' Original Motion to Alter or Amend Judgment*

 Plaintiffs' original Motion to Alter or Amend the Judgment, which was timely filed, constitutes nothing more than an attempt to relitigate issues that the Court previously considered and resolved in the Order granting Defendant's Motion for Summary Judgment and denying Plaintiffs' Motion. In particular, Plaintiffs vigorously argue the issue of exhaustion of the internal contractual remedies. It is noteworthy that Plaintiffs completely failed to dispute this issue in connection with the Cross–Motions for Summary Judgment. Summary judgment was completely warranted on this issue because the record before the Court presented no factual or legal dispute. The record revealed that detailed grievance procedures were in place to deal with disputes such as those presented by Plaintiffs and that they made no attempt to utilize those procedures. The law in Arizona plainly provided that the Plaintiffs were contractually bound by the grievance procedures that they failed to invoke.

Although Plaintiffs do raise some new arguments, they offer no legitimate reasons for having failed to place these before the Court when it considered the Cross–Motions for Summary Judgment. What is more, the arguments are meritless. First, Plaintiffs maintain that their failure to exhaust contractual remedies was excused by the Defendant's alleged breach of the contract. The authorities cited are inapposite. Plaintiffs also cite to case law from districts in which the law is contrary to Arizona law as set forth in *Thomas v. Garrett Corp.,* 744 F.Supp. 199 (D.Ariz.1989), *aff'd,* 904 F.2d 41 (9th Cir.), *cert. denied,* 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990), and *Moses v. Phelps Dodge Corp.,* 818 F.Supp. 1287 (D.Ariz.1993). Plaintiffs also argue that grievance procedures did not apply to them because they were not current employees. Again, no authority supports their position.

Plaintiffs also submit that the Arizona case law is erroneous regarding exhaustion of claims through the grievance process. None of these arguments constitutes any of the recognized grounds for setting aside the Court's decision on the Motion for Summary Judgment. Plaintiffs have not persuaded the Court that its judgment was based upon manifest error of fact or law; that newly discovered or previously unavailable evidence would change the Court's opinion; that granting the Motion has created a manifest injustice; or that there has been an intervening change in the controlling law.

**B.** *Plaintiffs' Motion for Leave to Amend its Motion to Alter or Amend Judgment*

■ Exactly forty-four days after the Court rendered its decision on the Cross–Motions for Summary Judgment, Plaintiffs filed a Motion for Leave to Amend their Motion to Alter or Amend Judgment. It is clear that Plaintiffs filed this motion in an attempt to avoid the strict requirement that a motion under Rule 59(e) be filed within ten days after the entry of judgment.

A summary judgment cannot be disturbed after expiration of the thirty-day time for appeal. Fed.R.App.P. 4(a)(1). An exception is made, however, if a timely motion is made pursuant to Rule 59(e). The Plaintiffs have cited no authority and the Court can find none that would permit their proposed amendment to relate back to the filing of the original Motion to Alter or Amend the Judgment. What is more, Plaintiffs' allegations of newly discovered evidence and their reasons for not having presented this evidence previously are completely unavailing.

Plaintiffs argue that it was discovered in the companion case of *Allen v. ITT Cannon,* CIV 94–0267 PHX ROS, that the Defendants were engaged in a conspiracy to avoid the company's seniority program and that this information came to the Plaintiffs' attention after the Motion to Amend the Judgment was filed. Plaintiffs have made no effort to explain why this new evidence could not have been presented to the Court earlier. It is noteworthy that Plaintiffs' counsel in the instant case is the same counsel in the companion *Allen* case. The Court notes that the litigation in the instant case had been pending for eighteen months, during which the Plaintiffs engaged in little or no discovery. It was not until fourteen months into the litigation and more than a week after briefing on the summary judgment issues that the Plaintiffs first raised discovery related to this new theory. Most important, as of March 6, 1995, Plaintiffs' counsel personally represented to the Court that all the discovery was completed in the instant case and that the case was ready to be scheduled for trial. Finally, the Court has since granted Defendant's Motion for Summary Judgment in the *Allen* case, finding no genuine issue of material fact regarding the allegation of conspiracy. That Order is annexed to this Order as Exhibit A.

In *Williams v. Poulos,* 11 F.3d 271 (1st Cir.1993), the First Circuit upheld a district court decision to deny a motion to alter or amend a judgment where the motion sought relief that was not requested in the complaint. Concomitantly, in the instant case Plaintiffs seek to raise a cause of action for conspiracy and fraud, which was not alleged in the original Complaint.

### *Conclusion*

Plaintiffs' Motion to Alter or Amend the Judgment and Motion for Leave to Amend the Motion to Alter or Amend is an attempt to relitigate old issues and to raise a new issue that was not within the parameters of the original Complaint. Accordingly,

**IT IS HEREBY ORDERED** denying Plaintiffs' Motion to Alter or Amend Judgment (Document No. 102).

Amend Judgment (Document No. 102).

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Leave to Amend its Motion (Document No. 111).