Roger DEMASSE; Maria A. Garcia; Billy W. Jones; Viola Munguia; Greg Palmer; Socorro Soza, Plaintiffs–Appellants,

v.

ITT CORPORATION, a Delaware Corporation dba ITT Cannon, Defendant–Appellee.

No. 96–15520.

United States Court of Appeals, Ninth Circuit.

Decided April 17, 1997.

Jack Levine, Phoenix, AZ, for plaintiffs-appellants.

John Alan Doran, Bryan Cave, Phoenix, AZ, for defendant-appellee.

Before: BYRON R. WHITE, Associate Justice, Retired; * CANBY and RYMER, Circuit Judges.

## ORDER

RYMER, Circuit Judge:

Former employees of ITT Corporation appeal from summary judgment on their claim that ITT breached an implied-in-fact promise to conduct layoffs according to the seniority provisions · of superseded employee handbooks, rather than the "merits" policy contained in a new handbook issued shortly before they were laid off. The district court assumed that the old handbooks were part of the employees' contracts because they did not clearly disclaim contractual intent, but held in a published opinion that the seniority provisions of those handbooks could be changed by ITT and thus no longer applied. *Demasse v. ITT Corp.*, 915 F.Supp. 1040 (D.Ariz.1995). The court also concluded in the alternative that summary judgment was appropriate because the employees were bound by the handbooks' grievance procedures, which the employees failed to exhaust.

The employees argue that while ITT was free to change its handbooks at any time, it could not change their employment contract; ITT maintains that the employees were employed at will notwithstanding the layoff provisions in the old employee manuals, and that it was entitled as a matter of law to revise its handbooks as well as its layoff policies. The employees further contend that exhaustion should only be required when grievance procedures are a condition for receiving the benefits which their contract of employment otherwise confers; ITT submits that employees cannot rely on handbooks to imply a seniority provision but refuse to follow the grievance procedure that the same handbooks prescribe.

There appears to be no controlling precedent under Arizona law, which we must apply in this diversity action, on the right of an employer unilaterally to revise handbook policies that have become part of the employment contract. Nor does there appear to be controlling Arizona law on the duty of an employee to exhaust internal grievance procedures before seeking relief for breach of an implied-in-fact contract arising from a handbook that also contains a complaint procedure. Because an answer to both questions may be determinative of this appeal, we certify each to the Arizona Supreme Court.

I

Roger Demasse, Maria A. Garcia, Billy W. Jones, Viola Munguia, Greg Palmer, and Socorro Soza were hired by ITT at various times between 1960 and 1979 as hourly workers.[1] In 1990, ITT began laying off employees at its Phoenix facility, reducing the number of hourly production workers from 132 to 68 by the end of 1992, to 49 by the end of 1993, and to 36 by the end of 1994. Demasse, Soza, and Palmer were laid off on April 29, 1993; Munguia, on May 4, 1993; and Jones and Garcia, on January 10, 1994.

ITT published five handbooks over the years. Those issued before 1989 provide that layoffs within each job classification will

---

* The Honorable Byron R. White, Associate Justice of the United States Supreme Court (Ret.), sitting by designation.

1. Because their claims are the same for purposes of this appeal, we shall refer to these employees collectively as "Demasse."

be made in reverse order of seniority. Except for the first handbook, which was issued before 1971 and which did not give employees "bumping" rights outside of their own classification or department, the pre–1989 manuals also permit employees to use their seniority rights to "bump" less senior employees in other job classifications within the same job family (so long as they can do the work without training), and in different job families (so long as they once worked in that classification and are just as skilled as the bumped worker). ITT concedes that the pre–1989 seniority policy was enforceable while it lasted.

In 1989, a new handbook came out. Its layoff provisions are virtually identical to those in the 1973 handbook it replaced, but the 1989 version has a disclaimer on the first page which states:

> Within the limits allowed by the law, ITT Cannon reserves the right to amend, modify, or cancel this handbook, as well as any or all of the various policies, rules, procedures, and programs outlined within it. Any amendment or modification will be communicated to affected employees, and while the handbook provisions are in effect, will be consistently applied.

The 1989 handbook also states:

> In all cases, the specific provisions of policies, rules, procedures, and programs supersedes the contents of this handbook and nothing contained herein shall be construed as a guarantee of continued employment.... ITT Cannon does not guarantee continued employment to employees and retains the right to terminate or layoff employees.

The Demasse employees signed a receipt for the 1989 handbook acknowledging that they had received the handbook. Each read it and understood that ITT had the right to change or cancel its provisions.

On March 18, 1993, ITT gave notice of a revised layoff policy for hourly workers that would supersede the handbook and become effective April 19. From then on, layoff decisions for hourly workers would be based on criteria previously used only for salaried layoffs, primarily "abilities and documentation of performance," rather than seniority. The

Demasse employees were advised of the policy, and were let go ahead of less senior employees pursuant to it.

Both the 1989 and the pre–1989 handbooks incorporate a complaint procedure. Under the 1989 handbook, an employee who feels that a "policy, rule, or procedure in this handbook has not been fairly administered" is first to talk to his supervisor, next to a higher level of management, then to the personnel department, and if still unsatisfied, may submit a formal complaint for resolution by a complaint committee or the Division General Manager.

Without following the grievance procedure, Demasse filed suit in federal district court for breach of the implied-in-fact contract provision requiring that layoffs be carried out according to seniority. ITT moved for summary judgment, which the Demasse employees opposed with affidavits stating that they had turned down other job opportunities because they didn't wish to lose the benefits of the seniority provisions in the handbook. The district court, following *Leikvold v. Valley View Community Hospital,* 141 Ariz. 544, 688 P.2d 170 (1984), denied summary judgment on the existence of an implied-in-fact contract because none of the handbooks (including the 1989 version) conspicuously stated that the manual is not part of the employment contract. However, relying on *Chambers v. Valley National Bank,* 721 F.Supp. 1128 (D.Ariz.1988), the court concluded that the terms of an employment contract created by one handbook can be superseded by a subsequent handbook. Thus, in its view, the 1989 handbook (which the Demasse employees knew about and continued to work at ITT after reading) allowed ITT to make any amendments to the handbook that it wanted to make so long as it told the employees about the change. Since the 1993 revised layoff policy states that it supersedes prior handbooks, the district court concluded that ITT fulfilled its contractual commitment to let the affected employees know about the change in policy. Therefore, the district court held, even assuming that the handbooks created an implied-in-fact contract, ITT did not breach it. The court also relied on federal courts' interpre-

tation of Arizona law to grant summary judgment for ITT on the ground that Demasse failed to comply with the grievance procedures described in the employee handbooks. *See Moses v. Phelps Dodge Corp.*, 818 F.Supp. 1287 (D.Ariz.1993) (handbook stated that grievance procedures were exclusive procedure for processing disputes for termination from employment); *Thomas v. Garrett Corp.*, 744 F.Supp. 199 (D.Ariz.1989) (handbook provisions applied to layoff), *aff'd*, 904 F.2d 41 (9th Cir.), *cert. denied*, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990). After unsuccessfully moving to alter or amend the judgment, Demasse timely appealed.

## II

The Arizona Supreme Court has instructed that "[i]n order to establish a breach of contract claim based upon a violation of personnel rules a plaintiff must prove two things: the personnel manual actually became part of the employment contract and the terms of the manual were breached." *Wagner v. City of Globe*, 150 Ariz. 82, 86, 722 P.2d 250, 254 (1986) (en banc).[2]

## A

Relying on *Leikvold* and *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (1985), Demasse argues that Arizona law treats handbook provisions upon which employees rely as implied-in-fact contract terms that limit the employer's right to discharge an at-will employee. While Demasse's argument overstates what *Leikvold* holds because its "handbook" exception does not turn entirely on reliance, *see Wagner*, 150 Ariz. at 85, 722 P.2d at 254, we nevertheless agree with the district court that *Leikvold* controls whether the seniority provisions of the old handbooks became part of the employment contract.

In *Leikvold*, the employee argued that the dismissal policy in a manual she was given constrained the hospital's right to discharge her except in conformance with the manual's procedures; the hospital contended that the manual was nothing more than a unilateral expression of policy. The Supreme Court held that handbook provisions can become part of employment contracts, and that whether any particular handbook modifies any particular at-will relationship depends on the language used in the manual as well as the employer's course of conduct and oral representations. As the Court explained:

> Employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason. Such actions, either not issuing a personnel manual or issuing one with clear language of limitation, instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual. However, if

**2.** As the Court explained:

> Every employment contract for an indefinite term is presumed to be terminable at will....
> The at-will employment relationship, despite its limitations, is nonetheless contractual. Employment contracts, particularly those which would be considered at will, are the best and most typical examples of unilateral contracts. Unlike a bilateral contract, a unilateral contract does not require mutuality of obligation; but there is sufficient consideration in the form of services rendered.... Because the at-will employment relationship is contractual, it can be modified by the parties at any time just as other contracts can be modified. Accordingly, the presumption that employment contracts of indefinite duration are terminable at will can be modified by the parties....
> One widely accepted means of modifying the at-will contract is use or publication of personnel

manuals, guides, or rules by employers. An employer's representations contained in a personnel manual "can become terms of the employment contract and limit an employer's ability to discharge his or her employees....", *Leikvold v. Valley View Community Hospital*, 141 Ariz. at 546, 688 P.2d at 172, even though the personnel policies were not bargained for at the time of hiring....

> Whether the parties intended to modify their at-will contract, by use of a personnel manual or otherwise, is a question of fact. Evidence relevant to this decision includes the language of the personnel manual, any representations made by the employer, and the course of dealing between the employer and employee. Reliance is not an essential predicate to the action, but is only one of the several relevant factors.

*Wagner*, 150 Ariz. at 84, 85–86, 722 P.2d at 252–54 (citations omitted).

an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it. Having announced a policy, the employer may not treat it as illusory.

141 Ariz. at 546, 688 P.2d at 174.

ITT argues that under the Arizona Court of Appeals's decision in *Duncan v. St. Joseph's Hospital and Medical Center,* 183 Ariz. 349, 903 P.2d 1107 (1995), rendered after the district court's decision in this case, and the federal district court's opinion in *Thomas,* its manuals cannot be construed as an implied contract because in the 1989 revision it specifically disclaimed contractual intent and reserved the right unilaterally to alter any policy contained in that handbook.

In *Duncan,* the Court of Appeals of Arizona considered whether an employee's at-will status was altered by the employer's handbook provisions. The hospital's handbook stated that neither the handbook nor the rules and policies in it constitutes an employment contract, that employment at St. Joseph's is "at will," and that the employment relationship may be terminated at any time with or without cause. The court held that, as a matter of law, the handbook was not part of Duncan's employment contract because it did not instill "any sensible expectations of job security or the belief that she could only be terminated for cause." *Duncan,* 183 Ariz. at 356, 903 P.2d at 1114. In so holding, the court noted the similarity between the hospital's disclaimer and the disclaimers in *Thomas* and *Chambers*—both of which stated that the employee was employed at will and that the employment relationship could be terminated by either party—but distinguished *Leikvold, Wagner,* and *Wagenseller,* where the handbooks contained no declarations about the at-will nature of the employment relationship or any disclaimers stating that handbook policies and procedures do not constitute an employment contract, and where the courts held that there were fact questions as to whether the hand-

books became part of the employment contract.

Because ITT's pre–1989 manuals had no disclaimers, we cannot say that there are no fact questions under *Leikvold* as to whether the seniority provisions became part of the contract.

**B**

We must therefore decide whether ITT could abrogate Demasse's pre–1989 expectations about layoff priorities by issuing its new manual in 1989 (which did not change the layoff policy but which stated that ITT could change its policies and that nothing in the handbook should be construed as a guarantee of continued employment), or by changing the layoff policy itself in 1993. The employees contend that neither could wipe out their right to be laid off according to seniority because they relied on the seniority provisions in the old handbooks, and because ITT could not change their deal without additional consideration. For this proposition *Demasse* relies on out-of-state cases,[3] and *Wagenseller.* ITT, on the other hand, submits that it was free as a matter of law to discard a layoff selection methodology that had become outdated. In support, it points to *Duncan* as well as to *Chambers* and *Bedow v. Valley National Bank,* 5 IER Cases 1678, 1988 WL 360517 (D.Ariz.1988), where federal district courts applying Arizona law held that employers could unilaterally change "just cause" relationships to "at will" relationships.

We disagree with the employees to the extent they argue that pre–1993 seniority rights were somehow "accrued" and cannot be changed for that reason. While the Arizona Supreme Court recognized in *Wagenseller* that the denial of accrued benefits may breach the duty of good faith implicit in a contract (which is not pleaded here), we discern nothing in Arizona law that would treat rights to layoff in a certain order as a vested benefit. Rights to be laid off in a certain order, or to bump junior employees, are not akin to accrued benefits that the employer either doesn't pay or avoids paying by termi-

---

**3.** *Toth v. Square D Co.,* 712 F.Supp. 1231, 1235–36 (D.S.C.1989); *Thompson v. Kings Entertainment Co.,* 653 F.Supp. 871, 875 (E.D.Va.1987);

*Enyeart v. Shelter Mut. Ins. Co.,* 693 S.W.2d 120 (Mo.App.1985); *Langdon v. Saga Corp.,* 569 P.2d 524 (Okla.App.1976).

nating employees. *Wagenseller,* 147 Ariz. at 384, 710 P.2d at 1040.

The more difficult issue is whether ITT could unilaterally change layoff policies which were an enforceable part of the Demasse employees' contract of employment by issuing a new handbook in 1989 declaring that it could amend its handbooks and policies—and then by modifying its layoff policy in 1993. Three federal judges applying Arizona law (including the district court in this case) have said yes.

In *Chambers,* the employee had worked for Valley National Bank from 1971 until 1987, when she was terminated without cause. The handbook in force at that time contained clear and conspicuous disclaimers indicating that the contents of the handbook do not constitute the terms of a contract of employment and that employment with the Bank is on an "at will" basis. Chambers knew about the disclaimers and understood them. Nevertheless, she argued that she should not have been terminated except for cause, in accordance with the bank's disciplinary procedures, since the disclaimers did not appear in any handbook until 14 years after she was hired. The court concluded that under these circumstances, the employee could not reasonably have relied on the manual as creating employment that was not terminable at will. Further, the court held that the fact that the bank's disclaimers were a recent addition to the handbook did not keep them from having the intended effect. Judge Strand reasoned:

> The inclusion of the disclaimer in the 1985 publications may best be considered an offer of a modification to a unilateral contract of employment, which plaintiff accepted by continuing her employment with defendant. *See Pine River State Bank v. Mettille,* 333 N.W.2d 622, 626–27 (Minn. 1983); *see also Mattison v. Johnston,* 152 Ariz. 109, 112–13, 730 P.2d 286, 289–90 (App.1986) (continued employment is sufficient consideration for the modification of an at-will employment contract to require the enforcement of a covenant not to compete added subsequent to the initial entry into the employment contract). Although an "employer is contractually bound to ob-

serve ... [published] policies until they are modified or withdrawn," *Enyeart v. Shelter Mut. Ins. Co.,* 693 S.W.2d 120, 123 (Mo.App.1985), he is free to modify his personnel policies prospectively. *Langdon v. Saga Corp.,* 569 P.2d 524, 527–28 (Okla. App.1976); *see also Wagner,* 150 Ariz. at 85–86, 722 P.2d at 253–54.

*Chambers,* 721 F.Supp. at 1131–32.

*Bedow* involved a similar situation, with Judge Broomfield reaching a similar conclusion:

> [A]s a matter of basic contract law, each successive version of defendant's personnel policy manual modifies and supersedes prior issued versions. Courts in other jurisdictions have specifically so held, *see Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983); *Langdon v. Saga Corporation,* 569 P.2d 524 (Okla.App.1986[1976]) while courts in Arizona have implicitly done so as in *Mattison v. Johnson [Johnston],* 152 Ariz. 109, 730 P.2d 286 (App. 1986) where the court ruled that continued employment constituted sufficient consideration to enforce a new term or provision of employment in an "at will" employment relationship.
>
> Therefore, the personnel manual in effect at the time of plaintiff's termination is controlling in this case. That manual specifically provides that employment with defendant is on an "at will" basis and can be terminated at any time by either party. Any other conclusion would create chaos for employers who would have different contracts of employment for different employees depending upon the particular personnel manual in force when the employee was hired. Such a result would effectively discourage employers from either issuing employment manuals or subsequently upgrading or modifying personnel policies.

*Bedow,* 5 IER Cases at 1680.

Thus, federal district courts construing Arizona law have uniformly concluded that handbooks with disclaimers issued after *Leikvold* may supersede prior policies in handbooks that had no disclaimers. They have done so on the unilateral contract theory that continued employment is sufficient

consideration to enforce a new term of employment in an at-will relationship.

No Arizona appellate decision has directly addressed the question whether, and under what circumstances, a personnel manual in effect at the time of an employee's termination supersedes previously issued manuals that have become part of the employment contract, but *Wagner* and *Duncan* suggest that the answer might be the same as that in *Chambers*. Like *Chambers*, *Wagner* starts from the premise that at-will employment relationships are unilateral contracts. However, the Arizona Supreme Court reiterated in *Wagner* that such contracts can be modified by personnel manuals that limit the employer's ability to discharge employees. Then in *Duncan*, while discussing the employee's argument that disclaimers in the 1988 version of the handbook did not insulate the employer from liability for ignoring its termination procedures, the court of appeals remarked in a footnote:

> By mentioning the year (1988) of the handbook at issue and that she had no idea what was in any prior handbooks, Duncan seems to imply that the handbook's relative newness somehow minimizes the significance of the disclaimer contained within. A similar argument was rejected in *Chambers v. Valley Nat'l Bank of Arizona*, 721 F.Supp. 1128, 1131–32 (D.Ariz.1988). There, the court stated that, because employment contracts can be modified at any time, employers were not precluded from having disclaimers become part of an implied-in-fact contract of employment. *Id.* at 1131.

*Duncan*, 183 Ariz. at 354 n. 3, 903 P.2d at 1112 n. 3. This statement comes close to being controlling authority, but we cannot be sure that the Arizona courts would embrace *Chambers*'s unilateral contract analysis when a handbook that has come within the *Leikvold* exception has been superseded in the employer's favor. Nor is it clear what rationale would be adopted. *Leikvold*, for example, has been interpreted by some as resting on a theory of promissory estoppel rather than unilateral contract. *See, e.g., In re Certified Question*, 432 Mich. 438, 449 & nn. 13–14, 443 N.W.2d 112, 117 & nn. 13–14 (1989) (contrasting *Leikvold* line of authority suggesting that enforceability of handbook policy turns on individual employee's reliance, with *Chambers* line employing the unilateral contract theory to find offer and acceptance of handbook provisions as terms of employment contract); Guy D. Keenan, Recent Decision, Employment, *Limiting Employment–At–Will in Arizona: Leikvold v. Valley View Community Hospital*, 27 Ariz. L.Rev. 235 (1985). Other courts have adopted quite different approaches. *See, e.g., Robinson v. Ada S. McKinley Community Servs., Inc.*, 19 F.3d 359, 364 (7th Cir. 1994) (applying Illinois law and concluding that acceptance and consideration for modification of manual cannot be inferred from employee's continued work); *In re Certified Question*, 432 Mich. at 453–56, 443 N.W.2d at 119–20 (permitting employers to modify handbooks provided employees receive reasonable notice of the change, but finding unilateral contract analysis to be an inadequate rationale); *see also* Stephen F. Befort, *Employee Handbooks and the Legal Effect of Disclaimers*, 13 Indus. Rel. L.J. 326 (1991/92) (discussing differing doctrinal approaches of courts considering whether employers may unilaterally alter handbook policies).

Rather than resolve the issue ourselves, it is preferable as a matter of comity to leave the decision, and supporting rationale, to Arizona's highest court.[4] Therefore, we respectfully ask for assistance on the following question:

> Once a policy that an employee will not be laid off ahead of less senior employees becomes part of the employment contract under *Leikvold v. Valley View Community Hospital*, 141 Ariz. 544, 688 P.2d 170 (1984), as a result of the employee's legitimate expectations and reliance on the em-

---

**4.** In this we join two other circuits confronted with similar questions arising out of superseded handbooks who likewise certified the question. *See* Order, *McIlravy v. Kerr–McGee Corp.*, 98 F.3d 1255 (10th Cir.1996) (vacating opinion, published at 74 F.3d 1017, in light of question certified to the Wyoming Supreme Court in *Brodie v. General Chemical Corporation*, 74 F.3d 1248 (10th Cir.1996)); *In re Certified Question*, 432 Mich. 438, 443 N.W.2d 112 (answering question certified by the Sixth Circuit).

ployer's handbook, may the employer thereafter unilaterally change the handbook policy so as to permit the employer to lay off employees without regard for seniority?

### III

Assuming that ITT is bound by the pre–1993 layoff policy, the employees also argue that they should not be barred from pursuing their claim for breach of contract for failure to exhaust internal complaint procedures described in the handbook. They contend that ITT's handbook was not applicable to their grievances because it applies to a "policy, rule or procedure in this handbook," whereas the grievances pertained to layoffs for which, as of April 19, 1993, there was no longer a handbook policy. This would not be the case, however, if Demasse were to prevail on his argument that ITT is contractually bound to the layoff policy in older handbooks.

ITT and the district court rely on *Thomas* and *Moses,* both of which require employees to exhaust on the footing that an employee must abide by all the terms in a handbook if the handbook is a part of the employment contract.[5] Demasse submits that *Thomas* and *Moses* are not persuasive because they rely on cases in which the employees were bound by arbitration provisions contained in a collective bargaining agreement, but neither is distinguishable on this basis. *Thomas* and *Moses* turn on the fact that the grievance procedures and the provisions the employees rely upon to modify the terms of their employment contract are part of the same handbook.

As there is no Arizona law on point, we must decide whether the Arizona courts would adopt the same rule as the federal courts. *Demasse* suggests that the Arizona Supreme Court would follow the approach of the Iowa Supreme Court in *Cannon v. National By–Products, Inc.,* 422 N.W.2d 638 (Iowa 1988), which requires an employer to

show that the employee's promise to exhaust the handbook's grievance procedure "constituted the entire agreed exchange by the [employee], or was expressly recognized in the agreement as a condition for his own performance," *id.* at 642, before denying recovery to an employee who seeks benefits that the employment contract otherwise confers. ITT, on the other hand, submits that Arizona's strong policy favoring nonjudicial resolution of disputes supports exhaustion in this case.

Whether Arizona would consider informal grievance procedures part of a modified contract that binds employees is unclear, and we believe best left to the Supreme Court of Arizona to decide. For this reason, we also certify the following question:

> In order to sue for breach of contract on the ground that an employer is bound by representations made in its employee handbook, must employees exhaust the complaint procedure described in the same employee handbook?

### IV

The Demasse employees argue that their cross-motion for summary judgment should have been granted because the pre–1993 provisions in ITT's handbooks constitute an implied-in-fact contract giving them enforceable rights to recover damages. For reasons that we have already explained, we defer to the Arizona Supreme Court on the questions that will control this requested relief.

### ORDER

We find that questions of state law will be determinative of the claims currently pending in this court. We additionally find that there is no controlling precedent in the decisions of the Arizona Supreme Court or in the Arizona Courts of Appeals. Pursuant to Ariz.Rev.Stat. § 12–1861 (1994)[1] and Arizona

---

**5.** ITT also urges us to affirm on the ground that Demasse made no substantial argument on the issue to the district court in opposition to ITT's motion for summary judgment, but we decline to do so, as the district court had to be (and was) satisfied that the employees failed to exhaust

grievance procedures and their claim was therefore barred as a matter of law.

**1.** Ariz.Rev.Stat. § 12–1861 provides that:
   The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United

Supreme Court Rule 27,[2] we accordingly certify the following two questions to the Arizona Supreme Court:

1. Once a policy that an employee will not be terminated ahead of less senior employees becomes part of the employment contract under *Leikvold v. Valley View Community Hospital*, 141 Ariz. 544, 688 P.2d 170 (1984), as a result of the employee's legitimate expectations and reliance on the employer's handbook, may the employer thereafter unilaterally change the handbook policy so as to permit the employer to terminate employees without regard for seniority?

2. In order to sue for breach of contract on the ground that an employer is bound by representations made in its employee handbook, must employees exhaust the complaint procedure described in the same employee handbook?

We respectfully request the Arizona Supreme Court to exercise its discretionary authority under Arizona Supreme Court Rule 27 to accept and to decide these questions. Our phrasing of the question should not restrict the Court's consideration of the problems and issues involved. If the Arizona Supreme Court declines certification, it should so state, and we will resolve the issue according to our perception of Arizona law.

The Clerk will file with the Arizona Supreme Court an original and six certified copies of this Order and a list of the counsel appearing in this matter along with their addresses and telephone numbers, pursuant to Arizona Supreme Court Rule 27(a)(3)(c) & (a)(4). The panel retains jurisdiction over further proceedings in this court. If the Arizona Supreme Court answers in the affirmative to either question, we affirm the judgment of the district court, deny ITT's request for attorneys' fees incurred on appeal, and decline to reach the employees' claim that the district judge erroneously denied their

motion for a jury trial pursuant to Federal Rule of Civil Procedure 38. If the Arizona Supreme Court answers in the negative to both questions, we reverse the judgment of the district court and remand for further proceedings not inconsistent with the Arizona Supreme Court's opinion, deny ITT's request for attorneys' fees incurred on appeal, and affirm the district court's denial of the employees' untimely demand for a jury trial.

SO ORDERED.

States, a United States district court or a tribal court when requested by the certifying court if there are involved in any proceedings before the certifying court questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the intermediate appellate courts of this state.

2. Rule 27(a)(1) provides that:

A certification proceeding may be commenced in this court by filing with the clerk of this court a certification order from a federal court....